BEAUFORT CONCRETE COMPANY,
Appellant,

v.

ATLANTIC STATES CONSTRUCTION
COMPANY, Appellee.

No. 21701.

United States Court of Appeals
Fifth Circuit.

Oct. 5. 1965.

Rehearing Denied Feb. 1, 1966.

W. Brantley Harvey, Jr., Harvey, Harvey & Battey, Beaufort, S. C., for appellant.

Irvine F. Belser, Jr., Belser, Belser & Baker, Columbia, S. C., James C. Grizzard, Grizzard & Simons, Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, and PHILLIPS * and WISDOM, Circuit Judges.

WISDOM, Circuit Judge:.

The plaintiff, Beaufort Concrete Company, appeals from an order granting summary judgment in favor of the defendant, Atlantic States Refining Company. The issues are (1) whether the district court abused its discretion in refusing to consider Beaufort's affidavits, submitted on the day of the hearing, opposing the motion for summary judgment and (2) whether the case presents a "genuine issue as to any material fact" within the meaning of Rule 56(c) of the

* Senior Judge of the Tenth Circuit sitting by designation.

Federal Rules of Civil Procedure. Affirming, we hold that the district court did not abuse its discretion in excluding the affidavits, and that, without the disputed affidavits, the case was a proper one for summary judgment.

September 1960, Atlantic States, a Georgia corporation, entered into a general contract with the Georgia Ports Committee for the construction of docks and warehouses at the Garden City Terminal near Savannah, Georgia. Beaufort, a South Carolina corporation, was Atlantic States's subcontractor for the supply of ready-mixed concrete. June 13, 1961, Atlantic States issued to Beaufort a purchase order for certain concrete required for the performance of the contract between Atlantic States and the Georgia Ports Committee. Beaufort's complaint alleges that Beaufort supplied concrete, meeting the contract specifications, worth $291,813.07, contract price, but was paid only $204,-299.98. In this suit Beaufort seeks to recover the balance of $87,513.09.[1]

In its answer Atlantic States asserts that six of the concrete "pours" so-called —those of June 23 and of July 1, 5, 7, 12, and 14—were found to be substandard by the project engineer, and had to be removed and replaced. The purchase order required that Beaufort's materials comply with the plans and specifications of the general contract between Atlantic States and the Georgia Ports Committee. That contract provided that the "decisions of the Engineer shall, within the terms of the Contract Documents, be final". Appended to Atlantic States's answer are letters from Robert Company and Associates, the architect-engineer employed by the Georgia Ports Committee, condemning the six allegedly defective slabs, and assigning as reasons for the deficiencies inadequate cement content and improper batching and mixing by Beaufort.

The answer also asserts and the district court found, that Atlantic States, after being advised by Robert Company and Associates that the defective concrete would have to be removed and replaced, made an agreement with Beaufort whereby Atlantic States was to make a good faith effort on behalf of Beaufort to persuade the project engineers to accept the defective concrete. In return, the answer alleges, Beaufort agreed (1) that it would abide by the ultimate decision of the architects and engineers, and (2) that if it became necessary to remove and replace the concrete, all costs, including those for tests and attorneys' fees, would be for Beaufort's account. October 30, 1961, relying on this agreement, Atlantic States wrote a letter to Robert Company and Associates asserting that four of the six allegedly defective pours were in fact within the specifications of the general contract, and that all six pours were adequate for the purpose for which they were intended. Atlantic States offered to make further tests and to furnish a ten-year structural bond guaranteeing the sufficiency of the condemned slabs.

Atlantic States's effort to persuade the engineers failed. December 5, 1961, Atlantic States wrote Beaufort that it had exhausted all feasible means of changing the engineers' decision, and was proceeding to remove and replace the condemned slabs, all costs to be charged to Beaufort's account. By a letter dated December 7, 1961, Henry C. Chambers, the president of Beaufort, acknowledged Atlantic States's letter of December 5, and remarked that his "only request regarding the demolition is that you can be completely honest and fair with us as to the charges and cost".

Because of the alleged agreement with Beaufort and Atlantic States's reliance on that agreement, Atlantic States urges that Beaufort is estopped to challenge the engineers' final decision, or to deny

1. April 20, 1962, Beaufort brought this suit in the Court of Common Pleas for Beaufort County, South Carolina. Atlantic States removed the ⸱ to the United States District Court for the Eastern District of South Carolina. It was then transferred to the Southern District of Georgia.

liability for the reasonable costs of removing and replacing the defective concrete. Items of offset and counterclaim urged by Atlantic States include $13,200, the price of the defective concrete; $95,621.04, the cost of removing and replacing the condemned slabs; and $100,000 for damage to Atlantic States's business reputation.

October 17, 1963, Atlantic States moved for summary judgment. In support of its motion Atlantic States submitted affidavits of Charles H. Girardeau III, vice-president of Atlantic States, and of Harry C. Robert, Jr. of Robert Company and Associates. The hearing was set for February 7, 1964. That day, just before the hearing was to begin, Beaufort's lawyer tried to serve counter-affidavits on Atlantic States's lawyer, who refused to accept service.[2] The court ordered the affidavits incorporated into the record, but later held them inadmissible because not timely filed under Rule 56 of the Federal Rules of Civil Procedure. February 10, 1964, the court granted the defendant's motion for summary judgment.

## I.

■ Rule 56(c) of the Federal Rules of Civil Procedure, dealing with summary judgment, provides that "[t]he adverse party *prior to the day of hearing* may serve opposing affidavits." (Emphasis added.) Professor Moore comments that this provision of Rule 56(c) "should be read in conjunction with Rule 6(d) which invests in the court the power to permit opposing affidavits 'to be served at some other time.'" 6 Moore, Federal Practice 2098. Rule 6 (d), the general canon on time limitations under the Federal Rules, requires opposing affidavits to be served "not later than 1 day before the hearing, unless the court permits them to be served at some other time". Because the "unless" clause is missing from Rule 56, it could be argued that the time limitation set out there permits no exception. But this reading does not comport with the liberal tenor of the Federal Rules, and is not justified by any singularity of the motion for summary judgment. "Rule 6(b) is a rule of general application giving wide discretion to the court." Advisory Committee's Note to Amendment to Rule 6. See generally Barron and Holtzoff (Wright's Ed.) §§ 215, 216.

Rule 6(b), relating to enlargement of time for doing any act "required or allowed to be done at or within a specified time", provides that

the court *for cause shown* may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon motion made after the expiration of the specified period permit the act to be done *where the failure to act was the result of excusable neglect * * *.* Emphasis added.)

---

**2.** The plaintiff's affidavits were the following: (1) an affidavit dated October 16, 1961, by Peter Doe, a driver of one of Beaufort's mixing trucks, alleging that "on many occasions" the supervisor employed by Atlantic States instructed the driver to add between five and ten gallons of water to batches that had already been mixed; (2) an affidavit by Henry C. Chambers, president of Beaufort, dated January 20, 1964, asserting that the tests of the condemned concrete were improperly conducted and interpreted, and that the attempt by Atlantic States to persuade the engineers to change their decision was not induced by any agreement that Beaufort would abide by the ultimate decision of the engineer or bear all costs of testing; and (3) an affidavit by Delmar L. Bloem, an expert in the field of ready-mixed concrete, dated February 3, 1964, expressing Bloem's opinion (a) that the condemned slabs were not substandard, (b) that the testing procedures were improper, (c) that Beaufort could not be held solely responsible for the strength of the concrete, since the handling, placement, and curing of the concrete, all of which affect its strength, were performed by Atlantic States and, (d) that water added to the ready-mixed concrete "would greatly affect the implaced strength of the concrete".

We conclude that it was within the district court's discretion, at least on proper showing, to admit the plaintiff's affidavits.

To exclude the affidavits, however, was no abuse of discretion. One of the affidavits is dated October 16, 1961, more than three years before the hearing; the other two are dated January 20 and February 3, 1964. So far as the record and briefs show, the plaintiff has offered no excuse, either in the district court or here, for its delinquency. In these circumstances, we cannot say that the district court exceeded its power in holding the plaintiff to the letter of the rule.

## II.

■ Without the excluded affidavits, little is left to the plaintiff's case—nothing, in fact, but the bare allegation in the complaint that Beaufort furnished adequate concrete for which it was not fully paid. This allegation will not withstand the force of the affidavits and letters submitted by the defendant, in support of its answer and motion for summary judgment, asserting that the concrete was substandard because improperly mixed and batched. Moreover, Beaufort does not deny that the project engineers condemned the disputed concrete. Under Georgia law, the decision of a duly designated arbitrator is conclusive, absent dishonesty or gross mistake. State Highway Dept. v. MacDougald Construction Co., 1939, 189 Ga. 490, 6 S.E.2d 570, 137 A.L.R. 520; Royal Indemnity Co. v. Batson-Cook Co., 1928, 37 Ga.App. 797, 142 S.E. 210; Green & Co. v. Jackson & Co., 1880, 66 Ga. 250; Grant, Alexander & Co. v. Savannah, Griffin & North Alabama Railroad Co., 1874, 51 Ga. 348. The sentences added to Rule 56(e) in 1963 control the decision.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The judgment of the district court is affirmed.