Ernest V. NOBLETT, Appellant,

v.

GENERAL ELECTRIC CREDIT CORPORATION, Appellee.

No. 9704.

United States Court of Appeals
Tenth Circuit.

April 2, 1968.

Petitions for Rehearing and Rehearing En Banc Denied June 20, 1968.

Certiorari Denied Nov. 12, 1968.

See 89 S.Ct. 295.

Val R. Miller, Oklahoma City, Okl. (Paul D. Sullivan, Duncan, Okl., on the brief), for appellant.

Gary C. Rawlinson and James D. Fellers, Oklahoma City, Okl., for appellee.

Before MURRAH, Chief Circuit Judge, LEWIS, Circuit Judge, and CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.

In this diversity action General Electric Credit Corporation obtained summary judgment against Ernest V. Noblett for rentals under a bowling equipment "Rental Lease", which had been assigned to the corporation by the lessor, Bowl-Mor Company.

Whether the case was factually ripe for summary judgment and whether Noblett in the rental agreement validly waived defenses as against the assignee as a matter of law, are the problems presented by this appeal.

Noblett's answer as amended had raised among other defenses that of failure of consideration by reason of alleged breaches of an express warranty against defects, an implied warranty of fitness and the obligations of the lessor to furnish advertising and training assistance.

The rental agreement included the following provision:

"The lessor may assign all its right, title and interest under this lease, including the payments due hereunder, but the assignee shall not be held responsible for any of the lessor's obligations. The obligations of the Lessee shall, however, continue in full force and effect."

Applying Massachusetts law in accordance with the terms of the rental agreement, and being of the view that Noblett thereby had waived the pleaded defenses, General Electric Credit Corp. v. Noblett, 268 F.Supp. 984 (W.D.Okl. 1967), the trial court granted summary judgment for the balance of the rentals in the sum of $64,389.91, together with interest of $3,541.45, $11,814 attorney's fees and costs of the action.

Section 9–206, Chapter 106, of the General Laws of Massachusetts, based upon the Uniform Commercial Code, provides:

"(1) Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3) * * *."

■ The equipment did not constitute "consumer goods" within the meaning of the Act.

The appellant Noblett contends that under any view of the Massachusetts law this case was not ripe for summary

judgment since there was an issue of fact whether the assignee credit corporation took the assignment "for value, in good faith, and without notice of a claim or defense"; if not, under the terms of the Code no waiver agreement would be recognized.

In support of its motion for summary judgment the credit corporation filed below an affidavit from one R. N. Lamy, who stated that he was a Credit Specialist for General Electric Credit Corporation; that on the 24th day of May, 1965, General Electric Credit Corporation took an assignment from Bowl-Mor Company, Inc., for "good and valuable consideration" of the lease in question and "that said assignment was taken by General Electric Credit Corporation in good faith and without notice of any claim or defenses which Ernest V. Noblett might have against Bowl-Mor Company, Inc.".

We are not unmindful of the practical difficulties of establishing by affidavit in strict compliance with Rule 56(e), F.R.Civ.P., a lack of notice on the part of a corporation having numerous officers, managing agents and employees. A reasonable application is all that is required. It is apparent that in any view this affidavit did not conform with the requirements that such an affidavit be made on personal knowledge, state facts which would be admissible in evidence and show affirmatively that affiant was competent to testify to the matters therein stated. See Zampos v. United States Smelting and Refining and Min. Co., 206 F.2d 171 (10th Cir. 1953). Cf. Bumgarner v. Joe Brown Company, 376 F.2d 749 (10th Cir. 1967); Preble v. Johnson, 275 F.2d 275 (10th Cir. 1960).

But at no time did the appellant indicate to the court below, directly or indirectly, that he questioned the sufficiency or effect of the affidavit. His affidavit in response to the motion was confined to assertions that Bowl-Mor had failed to perform its obligations and that there had been an understanding that a corporation to be organized by Noblett rather than he personally was to be liable for rentals. No denial or other reference

was made to the Lamy affidavit on the question of notice. Noblett asked, and was granted, leave to make a further search and showing concerning his claim that there was some writing relieving him from personal responsibility. No such showing was made and no further affidavit was submitted. The appellant did not indicate to the trial court in any way that he questioned the form, substance or effect of the affidavit.

■ It was said long ago and observed in various applications since that "Errors as a rule to be reviewable on appeal must be definitely and timely called to the attention of the trial court in order to afford a fair opportunity for it to pass upon the matter to correct its own errors, if any." Scritchfield v. Kennedy, 103 F.2d 467 (10th Cir. 1939). An affidavit that does not measure up to the standards of 56(e) is subject to a motion to strike; and formal defects are waived in the absence of a motion or other objection. 6 Moore's Federal Practice § 56.22(1) p. 2817; 3 Barron and Holtzoff, Federal Practice and Procedure § 1237, p. 171; Auto Drive-Away Company of Hialeah, Inc. v. I.C.C., 360 F.2d 446 (5th Cir. 1966); United States for Use and Benefit of Austin v. Western Electric Co., 337 F.2d 568 (9th Cir. 1964); Klingman v. National Indemnity Company, 317 F.2d 850 (7th Cir. 1963). Cf. Wagoner v. Mountain Savings and Loan Association, 311 F.2d 403 (10th Cir. 1962).

The reliance of the trial court under the circumstances upon the sufficiency of the affidavit is completely understandable. The belated claim of error in such respect could be persuasive only to prevent a gross miscarriage of justice. Such is not the case here; there is a more dispositive reason why the summary judgment cannot stand.

The trial court determined that in agreeing that "the Assignee shall not be held responsible for any of the Lessor's obligations", and that "the obligations of the Lessee shall, however, continue in full force and effect", Noblett effectually indicated "that he will not as-

sert against an assignee any claim or defense which he might have against the * * * Lessor" within the contemplation of § 9–206(1), and, hence, that he was barred from asserting against the appellee his defense of failure of consideration and related defenses.[1]

Our attention has been directed to two unpublished decisions of courts in other states holding that the precise language used in the form of the lease in question is valid and binding under Massachusetts law for the purpose.[2] And we are mindful that in Straight v. James Talcott, Inc., 329 F.2d 1 (10th Cir. 1964), this court held that an agreement of a buyer that he would settle all claims against the seller directly with him and would not set up any such claim against his assignee, operated to waive defenses in a suit brought by the assignee.

No Massachusetts decision has been called to our attention, nor can we find any, defining how far from the precise language of the authorizing statute an agreement might depart and still be effective as a waiver. Neither the decision of the trial court nor any of the cases cited come to grips expressly with the most persuasive phase of appellant's argument—that the intent manifested by the quoted provision of the lease agreement was not to waive defenses as allowed by § 9–206(1) of the Uniform Commercial Code but to relieve the assignee of the duty of affirmative performance of the lessor's obligations under the lease with reference to an entirely different section of the Code. It is provided in § 2–210:

> "(4) An assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract."

The provisions of the lease agreement which speaks in terms of obligations is peculiarly suited to an indication for the purposes of § 2–210(4) that there was no "delegation of the performance of the duties of the assignor" or a "promise by him to perform those duties." Indeed, more apt language for this purpose could hardly be devised than was used in the lease agreement. But with respect to waiver of defenses, the language at best is indirect and unclear and at its worst misleading or entrapping. The question of the appropriateness of language, however, is not the worst of the problem, which goes deeper into the very substance of the legal concepts involved.

An assignment in general terms under the Uniform Commercial Code, and, hence, under the present Massachusetts law, is an assignment of rights, and unless the language or the circumstances indicate the contrary, it is also a delegation of performance of the

1. "Whether the allegations in the answer and amendment thereto, to-wit: breach of warranty of fitness of the machines; disregard of the agreement to provide 'on the job training'; and failure to make allowance for advertising and signs, be technically designated as 'defenses', 'counterclaim' or 'set-off' and regardless of whether defendant seeks rescission of the contract or affirmance with damages to him because of the alleged breach, it is clear that all of the omissions complained of by him were obligations of Bowl-Mor, not plaintiff. It seems further to be clear from the contract that plaintiff is exonerated from responsibility for all of these complaints unless the contract provision allowing same be invalid".

2. General Electric Credit Corporation v. Brick Plaza Lanes, Inc., et al, Superior Court of New Jersey Law Division, Ocean County, Docket Number L25891–64, A–13908 (1966), and Baldino v. ABC Appliance Service, 83 Pa.Dist. & Co., 305 (Philadelphia County, 1952).

duties of the assignor and its acceptance by the assignee, constituting a promise by him to perform those duties. The promise is enforceable by either the assignor or the other party to the original contract. In general, whether there is a delegation of duties as well as rights in and of itself does not affect defenses available to the other original contracting party. If there is a delegation of obligations, failure of consideration remains a defense, and the same is true even though there is no delegation of obligation to the assignee in the absense of waiver; the assignee stands in the shoes of the assignor as far as the right to recover is concerned in either event. Moreover, if there is a delegation of obligation to the assignee, this in and of itself does not relieve the assignor from the obligation of performance. If the assignor is required to respond to the other contracting party after duties have been delegated by the assignor, the assignee may be rendered liable to the assignor, which is a reason why a nondelegation agreement may be important to the assignee in the absence of a waiver of defenses.[3]

The point of these general principles is that defenses are available against the assignee in the absence of waiver, not because of the delegation or non-delegation of duties but because the assignee in either event must claim under the original contract and is subject to the defenses allowed thereby. The fact that the lease recited that the lessee should continue to be bound to his contracted obligations despite any assignment does not suggest in context that he agreed to waive defenses any more than the agreement that responsibilities of the assignor were not to be deemed delegated had anything to do with the waiver of defenses. The intent and meaning of the lease in this respect is made all the more clear by Bowl-Mor's assignment to the credit corporation which simply provides on the point that "Assignee shall have no obligations of lessor under said lease."

Whether responsibilities of the assignor were or were not delegated pursuant to § 2–210(4), or as a matter of general law, the rule continued operative that failure of consideration could be raised as a defense either against the assignee or the assignor in the absence of a waiver as authorized by the other provision of the Code. There was no such waiver. To enlarge the agreement concerning the non-delegation of obligation into such a waiver would be not only unwarranted but unfair. When appellant consented to the non-delegation to the assignee of obligations of the assignor under the lease, whether viewed from the standpoint of one learned in the law and capable of appreciating these distinctions, or as one only generally aware of the meaning of language, he reasonably could have assumed that the purpose was what it purported to be and was not to preclude his defenses should he not receive the consideration for which he bargained. We are of the opinion that as a matter of law there was no waiver of defenses.[4]

We see nothing in Straight v. James Talcott, Inc., 329 F.2d 1 (10th Cir. 1964), supra, that warrants a contrary conclusion. There Oklahoma law was involved; the language which was employed more

---

3. See generally William D. Hawkland, A Transactional Guide to the U.C.C. (A. L.I.) (1964), § 1.25 p. 150 et seq.; 6 Am.Jur.2d Assignments, § 102, p. 282; 3 Williston on Contracts (Third Ed.-Jaeger), Sec. 432, pp. 177, et seq. Cf. Nickell v. United States, etc., 355 F.2d 73 (10th Cir. 1966); Denver United States Nat. Bank v. Asbell Bros. Constr., 294 F.2d 289 (10th Cir. 1961); Imperial Refining Co. v. Kanotex Refining Co., 29 F.2d 193 (8th Cir. 1928).

4. Even if the contract had been ambiguous on this point, summary judgment would have been inappropriate, since the appellant would have had the right to be heard on the question of intent as a matter of fact, and to resort to intrinsic aids to establish that intent at the trial. The lease agreement bears the letterhead of the lessor and appears to be on its printed form, and the rule of interpretation that in such event ambiguities are to be resolved against the drafter could well apply.

specifically sustained the conclusion reached and was not apparently designed for another purpose; it was not expressly questioned that the provision was intended to waive defenses, and the primary issue was whether such an agreed waiver would be valid under Oklahoma law. Massachusetts law governs the result here. In view of considerations discussed above and the general policy expressed in Quality Finance Company v. Hurley, 337 Mass. 150, 148 N.E.2d 385 (1957) it is fairly to be predicted that in the interpretation of the subsequently adopted Uniform Commercial Code an agreement that an assignment would not constitute a delegation of duties would not be so broadly construed as to be accepted in that state as a waiver of defenses under § 9–206(1).

Reversed and remanded for further proceedings not inconsistent with this opinion.

On Petition for Rehearing

PER CURIAM.

■ Appellee has filed a petition for rehearing, its only contention justifying further notice being that the court has held in effect that the "Sales" provisions of the Uniform Commercial Code govern "Secured Transactions". In other words, it is argued that "the application of Section 2–210(4) was erroneous" and would open all secured transactions to question by indicating that in the absence of specific negation the obligation of performance would be placed upon the security holder as a matter of course. It should have been enough to preclude such misunderstanding to quote, as we did, Section 2–210(4) which states among other things that there is a delegation of performance "unless the language or the circumstances (as in an assignment for security) indicate the contrary" (empha-

sis added). We did not refer to Section 2–210(4) to indicate that the "Sales" provisions of the Code necessarily governed Secured Transactions in the absence of language so providing but rather to demonstrate that waiver of affirmative performance is not the same as waiver of defenses for non-performance by a party to the original contract.

■ Far from justifying the appellee's claim that we misconceived the relationship of the Sales provisions to the Secured Transactions provisions of the Code, we simply pointed up in our opinion the basic misconception implicit in appellee's argument that language in the rental agreement which would have been appropriate for purposes of Section 2–210(4) relating to Sales could serve the entirely different purpose of satisfying the waiver of defense requirements established in Section 9–206(1) concerning Secured Transactions.

■ Finally, appellee sees in the language of the rental agreement that "the assignee shall not be responsible for any of lessor's obligations", an enigma if it is not held to constitute a waiver of defenses by the lessee since in a secured transaction an assignment does not delegate performance in any event. Perhaps appellee is in the best position to explain this supposed enigma; in the assignment by which it took the security it was again stipulated that "assignee shall have no obligation of lessor under the lease". The same question applies— why, if there would be no such obligation anyway, was this specifically provided there? No matter the reason, such language does not operate as a waiver of defenses under Section 9–206(1) and this is the determinative point.

The petitions for rehearing and for rehearing en banc are denied.