999 F.2d 86
 26 Fed.R.Serv.3d 234
 Matthew A. ORSI; Arlene J. Orsi; Alan B. Hare; Amelia P.
Hare; Paul A. Castiglia; Sharon A. Castiglia;
Frank Sabatino; Denise Sabatino,
Plaintiffs-Appellants,
and
Albert J. Sbarbaro; Diana Sbarbaro; John Nicora; Susan
Sbarbaro, Plaintiffs,
v.
Eileen KIRKWOOD; Kirkwood and Associates, Incorporated;
Kirkwood Realty, Incorporated; Northampton Investment
Company, Incorporated; Lassiter Realty, Incorporated; Noel
W. Crisler; Crile Crisler; Blue Heron Realty,
Incorporated; M.H. Cree; L.B. Cree, Defendants-Appellees.
 No. 92-1582.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 7, 1993.
Decided July 14, 1993.
 
 Francis Bosley Crowther, 3rd, Crowther & Bresee, P.C., Palmyra, VA, for plaintiffs-appellants.
 William McCardell Furr, Willcox & Savage, P.C., Norfolk, VA, argued (James C. Howell, Ronald P. Donn, Willcox & Savage, P.C., on brief), for defendants-appellees Northampton Inv. Co., Crile Crisler and Noel Crisler.
 Cecelia Ann Weschler, Weinberg & Stein, Norfolk, VA, argued (Jerrold G. Weinberg, Weinberg & Stein, on brief), for defendants-appellees Eileen Kirkwood, Kirkwood & Associates, and Kirkwood Realty.
 Walkley Elmes Johnson, Jr., Walker & Johnson, Exmore, VA, on brief, for defendants-appellees Blue Heron Realty, M.H. Cree and L.B. Cree.
 Deborah Shea O'Toole, Cowan & Owen, P.C., Richmond, VA, on brief, for defendant-appellee Lassiter Realty.
 Before RUSSELL, WILKINSON, and WILKINS, Circuit Judges.OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 This case presents issues arising under both the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq., and Fed.R.Civ.P. 56. Plaintiffs appeal the district court's entry of summary judgment against them on their claims under the Act and state contract law. The district court determined that either the statutory claims were time barred, or that defendants were exempt from the Act's requirements. On the contract claims, the court refused to consider as evidence unauthenticated documents submitted by plaintiffs on the morning of the summary judgment hearing. Plaintiffs offered no other evidence to counter defendants' proof that no issue of material fact existed. Because we find no error in the district court's analysis of the Act or its refusal to consider the documents, we affirm the award of summary judgment to defendants.
 
 I.
 
 2
 This lawsuit arises from the sale of several undeveloped lots in a 23-lot subdivision called Peaceful Beach Estates in Northampton County on Virginia's Eastern Shore. Eileen Kirkwood began marketing the property in 1987. She sold three lots to Dr. and Mrs. Crile Crisler and eleven to Northampton Investment Company, which the Crislers controlled. In 1988, Kirkwood also began developing approximately 110 lots in other subdivisions on an adjoining 674-acre tract.
 
 
 3
 Kirkwood and Northampton both listed their Peaceful Beach Estates lots with KCL Realty and Lassiter Realty. In 1987, KCL prepared at its own expense a promotional brochure listing together all of the Peaceful Beach Estates lots. KCL prepared the brochure without the knowledge or approval of either Kirkwood or Northampton.
 
 
 4
 Plaintiffs Orsis, Sabatinos, Castiglias, and Hares are four couples who purchased lots in the Peaceful Beach subdivision in 1987 and 1988. The Orsis bought their lot on July 7, 1988 from Northampton through Lassiter. The Sabatinos also purchased a lot from Northampton through Lassiter on November 21, 1987. The Castiglias purchased their lot from Kirkwood through KCL on April 10, 1988. The Hares purchased through KCL as well, but from Northampton, entering into a sales contract on June 14, 1988.
 
 
 5
 The Orsis initially filed this suit as a putative class action on July 5, 1991. Amended complaints were filed in October of 1991, adding the Sabatinos, Castiglias, and Hares as plaintiffs. Class certification was denied, and plaintiffs eventually dismissed all but Counts I and IV of their complaint. Count I alleged various violations of the Interstate Land Sales Full Disclosure Act, a statute designed to protect purchasers of real property sold through interstate commerce by imposing disclosure requirements on sellers. These alleged violations included failure to file a Statement of Record with the Department of Housing and Urban Development, failure to provide printed property reports, and failure to set forth the right to rescind in the purchase contracts. Count IV of the complaint alleged breach of contract because of defendants' failure to build a private road to the subdivision that met state specifications, as provided in three of the four sales contracts.
 
 
 6
 After discovery, each side moved for summary judgment. The district court granted summary judgment to each of the defendants on all counts. On Count I, the court held that the Act's limitations periods barred rescission and monetary damages claims by the Sabatinos, Castiglias, and Hares, as well as the Orsis' rescission claim. 15 U.S.C. §§ 1703(c), 1711(a)(1). The court also determined that Northampton, from whom the Orsis had bought their lot, was exempt from the Act's requirements because of the limited size of the development, id. at § 1702(a)(1), and because Northampton and Kirkwood had not combined in a common promotional scheme to market their lots. Accordingly, the court granted the defendants summary judgment on the Orsis' damages claim as well.
 
 
 7
 On Count IV, the district court found that plaintiffs failed to rebut defendants' sworn deposition testimony that the road to the subdivision substantially met state specifications. The court declined to consider the evidence offered by plaintiffs on this issue because the court deemed the offer of proof untimely and the documents themselves unauthenticated. Fed.R.Civ.P. 56(c), (e). Absent any other proof, the court concluded that plaintiffs had failed to raise a genuine issue of material fact and entered summary judgment against them. During its analysis of both counts, the district court also dismissed the claims against various defendants, such as Dr. and Mrs. Crisler, the realty companies, and two realty agents, who were not direct parties to the sales. Plaintiffs then brought this appeal.
 
 II.
 
 8
 Plaintiffs make several arguments under the Interstate Land Sales Full Disclosure Act. The first set of arguments deals with the Act's statutes of limitations, and why various claims by the plaintiffs should not be time barred. The second applies to the extent of the Act's coverage, and why Northampton Investment Company should not be exempt from that coverage.
 
 A.
 
 9
 We shall address the limitations arguments first. The Act provides a two-year statute of limitations for rescission of a contract to buy property. 15 U.S.C. § 1703(c). It provides a three-year statute of limitations for monetary damages for violations of its various sections. Id. at § 1711(a), (b). Plaintiffs originally filed suit on July 5, 1991, seeking alternatively rescission or damages. To be within the limitations period for rescission, plaintiffs should have entered into their sales contracts with defendants no earlier than July 5, 1989. To be within the time bar for damages, the contracts should have been signed no earlier than July 5, 1988.
 
 
 10
 The Hares signed their sales contract on June 14, 1988. They nevertheless argue that they are within the limitations period for a damages claim. The Hares contend that they backed out of their initial agreement because they could not make a downpayment, but then entered into a new agreement to buy the same piece of property. They claim to have signed this new agreement on the closing date for the property, July 13, 1988, and that the limitations period only began to run on this date. This argument fails, however, because the Hares presented no evidence of any new contract. All of the sworn proof submitted to the district court indicated that the June 14 contract controlled the transaction, and that the Hares merely closed on July 13, as provided for in the June 14 agreement. Courts uniformly hold that the Act's limitations period begins to run when an initial sales contract is signed. See Markowitz v. Northeast Land Co., 906 F.2d 100, 104 (3d Cir.1990) (collecting cases). Accordingly, the Hares' claim for damages is time barred.
 
 
 11
 The Sabatinos signed their sales contract on November 21, 1987. They nevertheless argue that their damages claim should not be barred because of equitable tolling. They maintain that the limitations period was tolled in August of 1990 when Kirkwood allegedly told them that their property could be sold for $190,000, some $30,000 more than their purchase price, but urged them not to sell it until the Army Corps of Engineers issued "wetlands" rulings on the whole subdivision. The Sabatinos contend that Kirkwood misrepresented their property's worth, thus tolling their limitations period until October 1991, when the Corps of Engineers issued its report finding no wetlands on the property.
 
 
 12
 This argument is meritless. To toll the Act's limitations periods, plaintiffs must show (1) that they exercised due diligence to discover their cause of action before the limitations period ran; and (2) that the defendant committed an affirmative act of fraudulent concealment to frustrate discovery despite due diligence. Lukenas v. Bryce's Mountain Resort, Inc., 538 F.2d 594, 597 (4th Cir.1976). The Sabatinos showed neither. They exercised no efforts to discover their cause of action; they never even attempted to determine the value or wetlands status of their own property. Even if Kirkwood's statement of the lot's value were false, which plaintiffs have not shown, the statement would not rise to the level of fraudulent concealment. Having the lot appraised or ascertaining its status under the Federal Clean Water Act was always open to the Sabatinos; Kirkwood's statement did not prevent them from taking such steps. The Sabatinos simply did nothing. In the absence of due diligence, they cannot seek equitable tolling of the time bar.[1]
 
 B.
 
 13
 The Orsis signed their sales contract with Northampton on July 7, 1988, and thus, their damages claim is the only one of the plaintiffs' statutory claims not time barred.[2] The district court found, however, that the Act did not apply to Northampton's transactions because the entire subdivision contained "less than twenty-five lots." 15 U.S.C. § 1702(a)(1). Plaintiffs contend, however, that the exemption for sellers of less than twenty-five lots does not apply because Northampton acted "in concert" with Kirkwood, and the two sold their lots through a "common promotional plan." See id. at § 1701(4). For evidence of such a plan here, plaintiffs allege that the Crislers, who controlled Northampton, had personal knowledge of Kirkwood's future development plans, and point to the brochure prepared by KCL Realty listing both Northampton and Kirkwood lots in the subdivision under the common name of Peaceful Beach Estates.
 
 
 14
 The evidence, however, fails to establish that Northampton and Kirkwood acted in concert; indeed, it plainly suggests otherwise. Northampton purchased its lots from Kirkwood in an arms-length transaction, with each side represented by counsel. The parties had no joint or fractional ownership of any lots. Indeed, neither party had any financial interest in the other. Northampton and Kirkwood's corporations also had no common officers or directors. Personal knowledge by the Crislers of Kirkwood's other developments hardly means that Northampton and Kirkwood were engaged in a joint enterprise. In the small coastal area where Kirkwood was developing at least six subdivisions, it would be difficult for the Crislers not to know of Kirkwood's other developments if they had spent any time at all in the area. Such knowledge does not mean that the Crisler's company then acted in concert with Kirkwood in any of these other developments.
 
 
 15
 The KCL brochure also does not show that Northampton and Kirkwood engaged in a common promotional scheme. KCL prepared the brochure at its own expense, without any authorization or direction from Kirkwood or Northampton. Northampton and Kirkwood did not enter into a common promotional plan just by listing their lots with the same real estate agent. HUD guidelines indicate that "[b]rokers selling lots for different individuals who do not own enough lots to come within the jurisdiction established by the Act generally would not be considered to be offering lots pursuant to a common promotional plan...." 24 C.F.R. Pt. 1710, App. A, at 75. That is exactly the case here.
 
 
 16
 In sum, we do not believe that Congress intended the Act to apply to Northampton's promotion of Peaceful Beach Estates. To stretch the Act to such an extent would drown the small developer in a sea of federal regulation, and extend a cause of action to every purchaser of land whose investment ultimately turned sour. The district court did not err in concluding that Northampton was exempt from the Act's requirements and that the Orsis' claims against Northampton accordingly fail.
 
 III.
 
 17
 Plaintiffs next argue that summary judgment against them on their breach of contract claims was improper because they offered "acceptable and probative evidence" that defendants had not built the road to their subdivision, Peaceful Beach Way, in accordance with state standards. The sales contracts between the Orsis and Northampton, the Hares and Northampton, and the Castiglias and Kirkwood specified that the road would be "completed to state specifications." Sworn deposition testimony from Kirkwood and Dr. Crisler established that Peaceful Beach Way was built to such specifications, except for the existence of a landscape island that is no longer part of this dispute. Plaintiffs argue that they offered in open court documents that were sufficient to create a material dispute of fact over the road's condition.
 
 
 18
 Specifically, on March 24, 1992, the morning of the summary judgment hearing, plaintiffs offered these documents: (1) a copy of the unsigned minutes of a November 1990 Peaceful Beach Homeowners Meeting; (2) a report and unsigned 1988 letter addressed to Eileen Kirkwood from Froehling & Robertson, an engineering firm; (3) an unsigned 1991 letter addressed to Eileen Kirkwood purportedly from the Virginia Department of Transportation, but not on VDOT letterhead; and (4) a signed and sealed letter dated March 9, 1992, addressed to plaintiffs' counsel from Clifford & Associates, an engineering firm. Plaintiffs did not explain why they did not offer the documents until the day of the hearing. None of the documents were authenticated through attached affidavits. Plaintiffs had not submitted the documents to the clerk's office, nor did they request to submit them in open court.
 
 
 19
 The district court did not consider these documents for summary judgment purposes because it found them to be untimely, unauthenticated, and generally not "submitted in a form which meets the requirements of Rule 56." Plaintiffs, however, argue that it is irrelevant that none of the documents were offered before the morning of the hearing or accompanied by affidavits. Plaintiffs maintain that courts should be "lenient" in accepting documents at the summary judgment stage, as long as they are "probative," or at least "evidence of evidence" that could later be introduced at trial.
 
 
 20
 We disagree. Fed.R.Civ.P. 56 prescribes specific procedures to be followed in submitting evidence for or against a summary judgment motion. These procedures help assure the fair and prompt disposition of cases. They ensure further that neither side in a dispute can unfairly surprise the other with evidence that the other has not had time to consider. They also allow a district court to ascertain, through criteria designed to ensure reliability and veracity, that a party has real proof of a claim before proceeding to trial.
 
 
 21
 Plaintiffs litigated their breach of contract claims in violation of these basic procedures. Fed.R.Civ.P. 56(c) states that the adverse party to a summary judgment motion may serve opposing affidavits "prior to the day of hearing." Here, plaintiffs offered their proof, not even in affidavit form, on the day of the hearing, not prior to it. If plaintiffs did not serve the documents prior to the hearing date, the district court was not required to consider them. Farina v. Mission Inv. Trust, 615 F.2d 1068, 1076 (5th Cir.1980) ("a court does not abuse its discretion when it refuses to accept out-of-time affidavits"); Foy v. Norfolk & Western Ry. Co., 377 F.2d 243, 246 (4th Cir.1967) (holding that an untimely offer of proof is the same as no offer of proof); Beaufort Concrete Co. v. Atlantic States Constr. Co., 352 F.2d 460, 462 (5th Cir.1965) (stressing that affidavits offered the day of a hearing have not been offered "prior to the day of hearing").
 
 
 22
 Of course, a district court has discretion to consider a late affidavit if it chooses to do so. Fed.R.Civ.P. 6(d) provides that affidavits may be served "at some other time" than prior to the day of a hearing, and Fed.R.Civ.P. 6(b) allows courts to enlarge the Rules' time periods. These exceptions, however, should generally be used only if cause or excusable neglect has been shown by the party failing to comply with the time provisions. See Hooks v. Hooks, 771 F.2d 935, 946 (6th Cir.1985) (holding that when a plausible excuse was provided, the court could consider an untimely affidavit); Foy, 377 F.2d at 246-47 (same); Beaufort Concrete, 352 F.2d at 463 (same). Here, plaintiffs offered no excuse for their delay; they simply sprung the documents on defendants and the court without warning on the hearing date. Such conduct is inexcusable given that the most recent document, the Clifford letter, was dated and available to plaintiffs more than two weeks prior to the hearing.
 
 
 23
 Additionally, plaintiffs did not offer their proof in the proper, authenticated form. It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1550-51 (9th Cir.1990); Martz v. Union Labor Life Ins. Co., 757 F.2d 135, 138 (7th Cir.1985). To be admissible at the summary judgment stage, "documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." 10A Charles A. Wright et al., Federal Practice and Procedure § 2722, at 58-60 (1983 & 1993 Supp.). In particular, a letter "must be attached to an affidavit and authenticated by its author in the affidavit or a deposition." Id. at 60. Of the letters offered by plaintiffs, only one, the Clifford letter, was even signed, much less authenticated by an author. None of the four documents were attached to affidavits, and the district court had no immediate way of ascertaining whether the documents were even what they purported to be.
 
 
 24
 We have no desire to make technical minefields of summary judgment proceedings, but neither can we countenance laxness in the proper and timely presentation of proof. Without the proof of these documents, plaintiffs offered no evidence that Peaceful Beach Way had not been built to state specifications. Defendants offered the only proof on this issue, namely sworn deposition testimony from Kirkwood and Dr. Crisler that the road had been constructed according to state standards. With their motion for summary judgment, defendants filed a wealth of properly sworn exhibits and affidavits. Because they did so, plaintiffs could not "rest upon the mere allegations" of their pleadings, Fed.R.Civ.P. 56(e), but needed to present proper evidence establishing an issue of triable fact. Allstate Fin. Corp. v. Financorp, Inc., 934 F.2d 55, 58 (4th Cir.1991). These four unauthenticated documents did not suffice to create such an issue. As a result, defendants were entitled to judgment as a matter of law. See Morrissey v. William Morrow & Co., 739 F.2d 962, 967 (4th Cir.1984).
 
 IV.
 
 25
 Plaintiffs also appeal the district court's dismissals of claims against the various other defendants, such as Dr. and Mrs. Crisler, the realty companies, and two individual agents, none of whom were direct parties to the sales of the lots. After reviewing these issues, we determine that the district court did not err in dismissing these claims too. For the above reasons, the judgment of the district court is
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Because equitable tolling results from a defendant's act of fraudulent concealment, Lukenas, 538 F.2d at 597, and the Sabatinos purchased from Northampton, their claim for tolling by virtue of Kirkwood's statement would only work if Kirkwood and Northampton had been acting in concert. For the reasons discussed below, we find that Kirkwood and Northampton did not act in concert, and therefore reject the Sabatinos' claim on this ground as well
 
 
 [2]
 The district court held that the Orsis' rescission claim was barred by the two-year statute of limitations, notwithstanding the fact that the appellees failed to notify the Orsis in their sales contract of the purchaser's right to rescind if the Act's requirements were not met. Because we have found that Northampton is exempt from the requirements of the Act and because the right to rescind is conditioned upon noncompliance with the Act, we need not reach the limitations issue on the Orsis' rescission claim