**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RESERVOIR CAPITAL CORPORATION,
Plaintiff-Appellant,

v.

LORAL INTERNATIONAL, INCORPORATED,
a/k/a Loral Corporation,
Defendant-Appellee.

No. 95-1357

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-94-792-A)

Argued: May 8, 1996

Decided: June 14, 1999

Before WIDENER and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Wendell Finner, LEITESS & ASSOCIATES, P.A., Balti-
more, Maryland, for Appellant. John P. Corrado, HAZEL &
THOMAS, P.C., Alexandria, Virginia, for Appellee. **ON BRIEF:**
Steven N. Leitess, LEITESS & ASSOCIATES, P.A., Baltimore,
Maryland, for Appellant. S. Miles Dumville, HAZEL & THOMAS,
P.C., Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The plaintiff, Reservoir Capital Corporation, appeals the district court's order denying its motion for an award of expenses and attorney's fees under Fed. R. Civ. P. 37(c)(2).[1] We affirm.

On March 18, 1992 the defendant, Loral International, Inc., entered into a contract with Microwave Laboratories, Inc. Microwave agreed to supply Loral with 66 travel wave tubes[2] on or before October 31, 1993 at a contract price of $16,150.00 each. At the time the contract was signed, Loral paid Microwave an advance of $1000.00 per tube or a total of $66,000.00. Because of Microwave's cash flow and production difficulties, the contract between Loral and Microwave was amended occasionally to provide advance billing and payment for tubes not yet delivered.

On July 30, 1993, Microwave entered a factoring agreement with Reservoir, which was in the factoring business, in which Reservoir agreed to extend funds by purchasing invoices for the tubes based on actual shipments to Loral. Under this agreement, Reservoir made immediate payment of 80 percent of the invoice for tubes actually shipped. This helped maintain Microwave's cash flow while Microwave awaited payment from Loral which was not due until 30 days after delivery. This agreement specifically provided that Reservoir would not provide factoring of progress billings. [3]

_____

[1] The merit of the judgment in favor of Reservoir is not a question before us in this appeal.

[2] A power amplifier that amplifies a microwave signal across a broad band of frequency ranges, in this case for radar jamming applications.

[3] Billings in advance of shipment or delivery.

2

In November 1993 the contract between Microwave and Loral was amended to change the delivery date for the remaining batch of about 15 tubes to March 31, 1994. (Three of those 15 were delivered on or about March 31st.) Then, around the first of March 1994, Microwave informed Loral that it would be unable to meet the March 31 date and sought to extend the date of delivery until the end of April. Loral's fiscal year ended on March 31, 1994 and its receipt of all 66 of the contract tubes by that date would enable it to justify its project budget. Loral asked Microwave to issue the invoice in the amount of $135,684.48 in March before actual delivery of the remaining tubes at the end of April. Needing money for production, Microwave then sought to factor the invoice to Reservoir.

Reservoir then agreed to advance cash against the progress invoice on terms which it stated in a letter to one Tabbitas of Loral dated March 29, 1994. That same day Microwave issued the invoice for the remaining tubes and sent a copy to Reservoir. Tabbitas signed the letter agreement on behalf of Loral and returned it to Reservoir on March 31. The letter stated as follows:

> Per our telephone conversation of March 28, 1994 please confirm that you are authorized to approve an amendment to contract #905684 to allow a progress billing of $135,684.48 with terms of net 30 days. Your signing of this letter will also serve as your verification that this invoice will be paid within terms and that there are no off-sets to this invoice.

> It is our understanding that Microwave Laboratories, Inc. will be issuing an invoice for this account within the next couple of days. It is our intention to purchase this invoice from Microwave Laboratories, Inc. We will notify you of this purchase once it has occurred and will submit payment instructions to you at that time.

The signed letter was returned to Reservoir on March 31 and Reservoir proceeded to purchase the invoice from Microwave.

In May 1994, after delivery of four of the remaining tubes, eight being not delivered, Microwave closed operations, filed a bankruptcy

3

petition, and was liquidated shortly thereafter. No part of the invoice was paid by Loral to Reservoir. Reservoir filed a complaint against Loral in the district court under diversity jurisdiction alleging fraud, negligent misrepresentation and breach of contract.

The dispute concerned the provision of the letter which stated that "[y]our signing of this letter will also serve as your verification that this invoice will be paid within terms and that there are no off-sets to this invoice." Reservoir claimed that the agreement meant that the invoice amount of $135,684.48 for the twelve tubes would be paid by Loral unconditionally and that there were no offsets to the invoice, present or future, including nondelivery. Loral maintained that at the time of signing the letter agreement, it had full confidence that the tubes would be delivered, and that the letter meant there were no off-sets at the time of entering the agreement. Loral contended that the words "paid within terms" meant that the invoice would be paid within the terms of the contract with Microwave, i.e., payment was due within 30 days after delivery, and therefore the agreement did not preclude future offsets.

Following a bench trial, the district court concluded that the terms of the letter agreement were that the invoice money would be paid unconditionally within 30 days and entered judgment for the plaintiff.

Reservoir then filed a motion pursuant to Fed. R. Civ. P. 37(c)(2) for an order requiring Loral to pay expenses and attorney's fees incurred in proving the truth of matters not admitted by Loral in response to a request for two admissions under Fed. R. Civ. P. 36.[4] The district court denied Reservoir's motion on the grounds that admitting as requested would require Loral to concede substantially all of its defenses, and that in the absence of bad faith or conduct sanctionable under Rule 11, the defendant should not have been required to concede its case for fear of a Rule 37(c) award if it lost.

Reservoir appeals this order and claims that the district court ignored the mandatory nature of the rule and created a fifth exception

_____

[4] Reservoir's position at oral argument is that it is entitled to the entire expenses of trial because if Loral had admitted the requests, the case would have been decided on a motion for summary judgment.

4

that requires a more stringent Rule 11 standard or showing of bad faith or improper purpose. We need not express an opinion on the reasoning the district court gave for its decision for we think its holding was correct on other grounds. See S.E.C. v. Chenery Corp., 318 U.S. 80, 88 (1943).

In request number 4, Reservoir asked Loral to admit that "Loral did not inform Reservoir prior to March 31, 1994 that Loral did not intend, by executing the Letter Agreement, to waive any defenses to the payment of MLI [Microwave] Invoice No. 3019." Loral objected to the request on the grounds that it was ambiguous, which it patently was, but then answered that it never intended by executing the letter "to waive any future or prospective defenses or offsets to payment of the invoice, particularly including, but not limited to, non-performance, and did not inform Reservoir otherwise." Loral's response to this request answered what Reservoir asked and thus Reservoir cannot claim the costs of proof. In that connection, we especially note that the invoice in question was for 12 tubes, and the claim in question is for all 12 of them, but only four were delivered. So the defense of non-performance, although it did not prevail, was real.

In request number 5, Reservoir asked Loral to admit"[t]hat Loral intended, by executing the Letter Agreement, to induce Reservoir to believe that MLI [Microwave] Invoice No. 3019 would be paid within its terms." Loral objected that the request was ambiguous, which it also patently was, "paid within terms" not being words of art. Loral then answered that it intended by executing the letter to reflect its understanding that the statements made by Reservoir in the letter were accurate as of the date Loral signed the letter.

In connection with the two requests involved here, number 4 and number 5, Loral on appeal relies on BAII Banking Corp. v. UPG, Inc., 985 F.2d 685 (2nd Cir. 1993), and Noblett v. General Elec. Credit Corp., 400 F.2d 442 (10th Cir. 1968), both of which cases support its position as to which defenses it might have asserted in the proceeding.[5] Those cases support a reasonable ground for it to believe it might have prevailed on the matter. See Fed. R. Civ. P. 37(c)(2)(C). Indeed,

_____

[5] Loral states in its brief, whichis unrefuted, that both BAII and Noblett were relied on in the district court.

5

although the appendix does not show whether the point was argued in the district court, the very ambiguity in the wording of the requests for admission and the papers which make up the contract was likely the principal or only reason for the admission of parol evidence as to the meaning of the papers, otherwise an apparent violation of the parol evidence rule, and which lead to Reservoir's favorable verdict on the merits.

The judgment of the district court is accordingly

AFFIRMED.

6