PER CURIAM:
John E. Washington appeals from the district court’s award of summary judgment in favor of the City of Charlotte (the “City”) in Washington’s employment discrimination suit. Washington initiated this action in the Western District of North Carolina on December 23, 2002, alleging that the City had contravened Title VII by terminating him because he is African-American. Washington contends that the court erred in its seventeen-page summary judgment Order of June 14, 2005, in which it concluded that he had raised no genuine issues of material fact. See Order, Washington v. City of Charlotte, No. 3:02-cv-00534 (W.D.N.C. June 14, 2005) (the “Opinion”). More specifically, Washington maintains that he presented a genuine factual issue as to whether the City had failed to terminate white employees who engaged in conduct similar to his own. As explained below, we affirm.[1]
I.
On April 24, 2001, Washington was terminated from his position with the City’s Aviation Department (the “Department”), where he had worked as a Labor Crew Chief at Charlotte Douglas International Airport.[2] According to his notice of termination, Washington was fired for improperly appropriating City-owned landscaping stone for personal use and engaging in conduct toward a non-supervisory employee that was unbefitting a supervisor. The notice of termination informed Washington that, in appropriating the stone, he had violated Department policy on the use of City property, as well as the general standards of conduct applicable to all City employees. Washington admitted that he had taken the stone (using a City-owned tractor to load it into his truck), and that he had been involved in an argument with a non-supervisory employee.
Despite his admissions, Washington protested his firing in an internal grievance, which he filed on May 7, 2001, asserting that white supervisors had previously stolen from the Department or committed more serious infractions, yet not been terminated. As pertinent here, Washington *275 alleged that a white supervisor named Mike Arnold, who operated a landscaping business in addition to having a separate job with the City, had previously appropriated trees delivered to the City at the Airport and used them in his landscaping business. Washington also alleged that a white supervisor named Elmo Langley “was not terminated for his incident,” and that another white supervisor named Terry Summerville “took copper to Tennessee during regular work hours but was not terminated.” J.A. 334.[3] Washington did not elaborate on either of the latter two allegations.
In its response to Washington’s grievance, issued on May 30, 2001, the Department concluded that any trees Arnold had ordered from the City’s vendor for use in his landscaping business had been ordered in Arnold’s own name and paid for by him. The Department also responded that the allegations made against Langley and Summerville had been investigated and resolved in accordance with applicable City policy, but that information from those individuals’ personnel files could not be released in response to Washington’s grievance. Finding that Washington’s termination had been appropriate, the Department denied his grievance. Washington appealed the Department’s ruling on the grievance to the City, which, on January 24, 2002, upheld the denial.
On May 15, 2001, shortly after filing his grievance, Washington also filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the “EEOC”). The EEOC investigated Washington’s allegations and, on September 20, 2002, issued Washington a right-to-sue letter, clearing the way for him to pursue his claim in court.
On December 23, 2002, Washington filed his Complaint in this matter, alleging that the City had contravened Title VII by, inter alia, “terminating plaintiff when other employees of a different race accused or known to have violated the same or more egregious defendant policy [sic] were not terminated.” Complaint 2 (J.A. 5). In discovery, Washington deposed Jerry Orr, the Department Director, regarding Arnold’s purchase of trees from the vendor used by the Department. Orr testified that Arnold had, with the permission and oversight of his supervisor, occasionally ordered trees for his personal business and paid for them himself. Orr stated that Arnold did not order trees on the City’s account or appropriate a discount meant for the City. Washington elicited no admissible evidence to the contrary.
Washington did not seek any discovery relating specifically to either Summerville or Langley. In his interrogatories, however, he requested information concerning any other employee misconduct “involving the taking or misusing of City property.” J.A. 443. The City’s response identified four instances of such misconduct, describing them in general terms and withholding the names of the employees involved. The City advised that it was “prohibited from releasing information from personnel files of employees, except as provided by NCGS § 160A-168.” Id. at 444. That notice reiterated the City’s disclosure to Washington, made at the outset of discovery, that employee personnel files “may be subject to various applicable statutory protections and privacy issues, including but not limited to NCGS § 160A-168, and it may be necessary to obtain a Court Order to utilize these materials.” Id. at 22 (City’s *276 Rule 26 disclosures). Washington did not pursue any such court orders.
On July 30, 2004, after discovery had been completed, the City moved for summary judgment, pursuant to Rule 56(b), contending that Washington had failed to forecast sufficient evidence for a rational trier of fact to find that the Department had retained white supervisors whose conduct was similar to his. The district court granted summary judgment to the City by its Opinion of June 14, 2005.
Washington has appealed the district court’s award of summary judgment on his Title VII claim, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.
II.
We review de novo a district court’s award of summary judgment. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir.1996). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed. R.Civ.P. 56(c). We construe the evidence and draw all reasonable factual inferences in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
III.
Washington contends that the district court erred in granting summary judgment to the City because he raised a genuine issue of material fact on whether the Department had failed to terminate white supervisors who engaged in conduct similar to his. We find no merit in this assignment of error, however, because Washington did not proffer evidence sufficient for a rational trier of fact to find in his favor.
Washington sought to establish his Title VII claim under the familiar McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Pursuant thereto, he bore the initial burden of establishing a prima facie case of racial discrimination. See id. at 802, 93 S.Ct. 1817. If he had done so, the burden would have shifted to the City to articulate some legitimate, nondiscriminatory reason for his termination. See id. And, if the City had then carried its burden, Washington would have been obliged to show that the City’s proffered nondiscriminatory reason was pretextual. See id. at 804, 93 S.Ct. 1817; see also Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir.1996).
To satisfy the first step in the McDonnell Douglas framework — the prima facie showing — Washington was required to demonstrate that (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who were not members of the protected class were retained under similar circumstances. See Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.1995); see also McDonnell Douglas, 411 U.S. at 802 & n. 13, 93 S.Ct. 1817; Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir.1993). The City concedes that Washington established the first three of these four prongs. On the fourth, however, the district court concluded that Washington had failed to raise a genuine question of fact, and that, as a result, he was unable to make a prima facie showing of a racially discriminatory termination. Opinion 17.
Washington disputes the district court’s conclusion, relying on his allegations that white supervisors Arnold and *277 Summerville had contravened the Department’s policy on the use of City property but were not fired.[4] Unfortunately, Washington’s assertions are not supported by the record. It is well established that a summary judgment motion cannot be successfully opposed by unsubstantiated allegations; rather, the non-moving party is obliged to “go beyond the pleadings and by her own affidavits, or by the ‘depositions, answers to interrogatories, and admissions on file,’ designate ‘specific facts showing that there is a genuine issue for trial.’ ” Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). On this record, as the court ruled, Washington failed to satisfy that burden. With regard to Arnold’s alleged misconduct, the only evidence of record cognizable under Rule 56(c) is Department Director Orr’s deposition testimony. Orr testified that Arnold sometimes ordered trees from the City’s vendor, but did so in his own name, with his own money, and with the permission and oversight of his supervisor. J.A. 257, 273. That evidence, of course, contradicts Washington’s allegations.
Washington alleges that Arnold actually ordered the trees for his personal business using the City’s account, and without his supervisor’s permission. His sole evidence on this point, however, is a document of unknown authorship, purporting to summarize an interview with Don Hicks, Arnold’s supervisor. See J.A. 428. (Washington maintains that the document was prepared in the course of the EEOC investigation.) In addition to being anonymous, of course, this document is unsworn. And it is clear that unsworn, unauthenticated documents — let alone anonymous ones — cannot be considered in connection with a motion for summary judgment. Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir.1993). Washington’s contention regarding Arnold is thus supported by bare allegations only, which are directly contradicted by Orr’s deposition testimony. Such allegations do not constitute evidence from which a reasonable trier of fact could find in Washington’s favor.
Washington’s allegations regarding Summerville likewise lack evidentiary support. Washington asserts, however, that this absence of evidence is due to the City’s refusal to release information from Summerville’s personnel file. During discovery, the City explained to Washington that employee personnel files are protected from disclosure by N.C. Gen.Stat. § 160A-168, and that “it may be necessary to obtain a Court Order to utilize these materials.” J.A. 22 (City’s Rule 26 disclosures); see also J.A 444 (City’s response to Washington’s interrogatories). As the City points out, the pertinent statutory provision generally prohibits the disclosure of information from the personnel file of a city employee. See N.C. Gen.Stat. § 160A-168 (c). Such information may be disclosed, however, as the statute specifies, upon order of a court of competent jurisdiction. See id. § 160A-168(c)(4). Washington does not assert that he ever sought such an order, even though the City expressly advised him of his need to do so. Consequently, there is no evidence of record supporting Washington’s allegation regarding Summerville.
*278 In these circumstances, the district court correctly concluded that Washington was unable to show any genuine factual question as to whether white supervisors had been retained by the City under circumstances similar to his. See Opinion 17. Washington thus failed to establish a pri-ma facie case of a discriminatory termination under Title VII, and the court properly awarded summary judgment to the City. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 135 (4th Cir.2002) (affirming summary judgment against Title VII plaintiff because he failed to establish pri-ma facie case).
IV.
Pursuant to the foregoing, we reject Washington’s contention of error and affirm the district court’s award of summary judgment to the City.

AFFIRMED.

. In addition to Washington’s assertion of a genuine question as to whether he was treated worse than white employees in similar circumstances, he maintains that there were two other genuine issues of material fact: whether the City proffered legitimate, nondiscriminatory reasons for his termination, and whether the City’s proffered reasons for his termination were pretextual. Because we find no merit in Washington’s first contention, we conclude that he failed to establish a prima facie case of a discriminatory termination, and we do not reach or address his latter two assignments of error.

. The factual predicate of this appeal is taken from the record below. We construe the evidence and draw all reasonable factual inferences in the light most favorable to Washington. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

. Citations herein to "J.A. -” refer to the contents of the Joint Appendix filed by the parties in this appeal.

. In seeking to properly support his disparate treatment claim, Washington also submitted affidavits from two coworkers alleging that Arnold had engaged in misconduct other than the theft of City property: directing subordinates to perform work for his personal benefit while on City tíme. Washington did not, however, forecast evidence that would sustain a finding that management had been made aware of such allegations, and thus failed to link them to his disparate treatment claim.