422 F.2d 1092
 George NOROIAN, Bankrupt, Appellant,
v.
William C. HERN, State Labor Commissioner and Chief of Division of Labor Law Enforcement, Department of Industrial Relations, State of California, Appellee.
 No. 22962.
 United States Court of Appeals, Ninth Circuit.
 March 13, 1970.
 
 LeRoy J. Reinhardt, Fresno, Cal., for appellant.
 Douglas M. Phillips (Argued), Div. of Labor, Law Enforcement, San Francisco, Cal., Richard V. Boulger, Asst. U. S. Atty., Small Business Admin., Fresno, Cal., for appellee.
 Before MADDEN, Judge of the United States Court of Claims,* and HAMLEY and ELY, Circuit Judges.
 HAMLEY, Circuit Judge:
 
 
 1
 George Noroian, who had voluntarily petitioned for a discharge in bankruptcy, appeals from a district court order affirming a referee's order denying such discharge. Discharge was denied pursuant to section 14(c) (2) of the Bankruptcy Act (Act), 11 U.S.C. § 32(c) (2). The referee determined that Noroian, without justification, failed to keep books of account or records from which his financial condition and business transactions might be ascertained, and that, under all of the circumstances of the case, such failure was not justified. Noroian questions these determinations.
 
 
 2
 In 1954, Noroian and his sister, Archie Noroian, organized three corporations, the principal business of which was to carry on the Noroians' previous partnership business of growing, canning and selling fresh and canned fruits and other crops. These corporations were George Noroian Company, Fruitful Valley Farms and Bear Mountain Orchards. Two years later Bear Mountain Orchards was merged with Fruitful Valley Farms.
 
 
 3
 Noroian and his sister had equal stock ownership in the corporations. Noroian, however, was the corporate officer in charge of their operations and controlled their affairs. With the knowledge of his sister, Noroian commingled the assets, liabilities and properties of George Noroian Company with those of Fruitful Valley Farms, and commingled his own assets, liabilities and properties with those of the two corporations. He had no other assets, business interests, occupation or source of income other than as an employee, stockholder and officer of the two corporations.
 
 
 4
 On January 18, 1963, George Noroian Company filed a petition in bankruptcy under Chapter XI of the Act. In those proceedings, the schedule of liabilities lists a total of $71,029.95 for wages due employees, all of which claims had been assigned to the California Division of Labor Law Enforcement (California Division). After this petition had been filed, the business was operated by Noroian as debtor in possession until October, 1963, when a receiver was appointed. The corporation was adjudicated a bankrupt November 1, 1963.
 
 
 5
 On April 1, 1964, the trustee in bankruptcy in that proceeding abandoned the company plant, real property and equipment. The corporation thereafter sought to reactivate the cannery business during the 1964 and 1965 seasons, but without success. George Noroian Company has not applied for, or been granted, its discharge in bankruptcy in the Chapter XI proceedings. In the meantime, through a series of six foreclosures, Fruitful Valley Farms lost all of its assets except for some worthless automotive equipment.
 
 
 6
 On June 16, 1966, Noroian filed a debtor's petition in bankruptcy under section 4 of the Act, 11 U.S.C. § 22. He listed, among his liabilities, the same wage claims, aggregating $71,029.95, held by the California Division, as were listed in the corporation's Chapter XI proceedings. On October 10, 1966, Sigmund Arywitz, State Labor Commissioner and Chief of the California Division, filed a specification of objections to the discharge in bankruptcy of Noroian. Arywitz has since been succeeded by William C. Hern, and the two will be referred to herein as appellee.
 
 
 7
 Invoking section 14(c) (2) of the Act, appellee urged, as one ground for his objection to discharge, the assertedly unjustified failure of Noroian to keep books of account or records from which the bankrupt's financial condition and business transactions might be ascertained.
 
 
 8
 An extensive hearing was held before the referee, during which the testimony of several witnesses was received, and numerous records and account books were introduced in evidence. Sheldon Lewis, a certified public accountant, was appointed by the referee, and compensated by the objecting creditor, with directions to examine the books of account and records of the corporations and Noroian. He was asked to determine whether those books and records were kept and preserved in such manner that the financial condition and business transactions of the corporations and of Noroian might be ascertained.
 
 
 9
 As established at the hearing, Noroian preserved a great many original records such as invoices, bills and cancelled checks, but these were incomplete in numerous respects. He had a number of account books covering periodic intervals, including a sales register, cash receipts journal and a general ledger. These books of account, however, were haphazardly maintained, and also incomplete.
 
 
 10
 The court-appointed accountant testified that a competent accountant, by examining Noroian's books and records, would be unable to determine the bankrupt's financial condition at the time he filed his petition, except by using "an unlimited amount of time or funds." This accountant and the accountant who testified for the objecting creditor were in agreement that in order to ascertain Noroian's financial condition, it would be necessary to make extensive inquiries of those with whom he did business. Much of Noroian's difficulty stemmed from his financial inability to employ competent bookkeepers. The record nevertheless reflects an attitude on his part of almost studied indifference in the matter of maintaining proper records, despite frequent reminders and advice from his auditors.
 
 
 11
 Since the referee had the assistance of an accountant of his own choice, he did not feel it necessary to make a personal study of Noroian's books and records. But the record indicates that the referee gave full consideration to all of the evidence and personally conducted a searching examination of several of the witnesses. The record further indicates that, in evaluating the evidence and reaching a conclusion, the referee had in mind the established principle that a bankrupt's books need not be perfect nor follow any particular system. All that is required is that a competent accountant should be able to determine from such books and records the financial condition of the bankrupt. See Moffett v. Union Bank, 378 F.2d 10 (9th Cir. 1967); Burchett v. Myers, 202 F.2d 920 (9th Cir. 1953); Cowan's Bankruptcy Law, § 202, page 128 (1963).
 
 
 12
 We conclude that the referee's determination that, without justification, Noroian failed to keep and preserve books of account from which his financial condition and business transactions might be ascertained, is based upon findings of fact which are not clearly erroneous, and upon established principles of law. Accordingly, the order of the district court approving the referee's determination and denial of discharge is
 
 
 13
 Affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable J. Warren Madden, Senior Judge of the United States Court of Claims, sitting by designation