PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: ELWOOD DEAN FRENCH,
                              *Debtor.*

MERCANTILE PENINSULA BANK, a
Delaware Corporation,
                    *Plaintiff-Appellee,*

v.

ELWOOD DEAN FRENCH,
                *Defendant-Appellant,*

and

GEORGE W. LIEBMANN,
                              *Trustee.*

No. 06-1405

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge.
(1:05-cv-00376-RDB; AP-01-05201; BK-01-56579)

Argued: May 24, 2007

Decided: August 27, 2007

Before KING and GREGORY, Circuit Judges, and
Frank D. WHITNEY, United States District Judge for the
Western District of North Carolina, sitting by designation.

Vacated and remanded by published opinion. Judge King wrote the
majority opinion, in which Judge Gregory joined. Judge Whitney
wrote an opinion concurring in part and concurring in the judgment.

**COUNSEL**

Stanton J. Levinson, Silver Spring, Maryland, for Appellant. John B. Robins, IV, Salisbury, Maryland, for Appellee.

---

**OPINION**

KING, Circuit Judge:

Debtor Elwood Dean French appeals from the final judgment of the district court in this matter, affirming the bankruptcy court. *See French v. Peninsula Bank*, No. 1:05-cv-00376-RDB (D. Md. Feb. 21, 2006). By its opinion of January 7, 2005, the bankruptcy court denied French's discharge petition and awarded summary judgment to creditor Mercantile Peninsula Bank ("Peninsula") on two independent grounds. *See In re: French*, No. 01-5-6579-JS (Bankr. D. Md. Jan. 7, 2005). First, the bankruptcy court determined that French's discharge petition should be denied because he had knowingly made false oaths during his bankruptcy proceedings. Second, the court concluded that the petition should be denied because French had failed to keep and preserve adequate records from which his financial condition could be ascertained. French contends on appeal that the bankruptcy court erred by failing to apply the appropriate principles to its assessment of Peninsula's summary judgment motion, and that the district court erred in affirming that decision. More specifically, French maintains that there are genuine issues of material fact concerning whether he knowingly made false oaths in his bankruptcy proceedings, and whether he failed to keep and preserve adequate financial records. As explained below, we vacate and remand.

I.

A.

On October 10, 2000, French filed a Chapter 7 petition for bankruptcy relief in the Middle District of Florida, claiming that he was a Florida resident and seeking to protect his Florida residence from his creditors under the state homestead exemption.[1] On January 12,

---

[1]The facts underlying this appeal are presented in the light most favorable to French, as he is the non-moving party with respect to the sum-

2001, Peninsula, one of French's creditors, filed a Complaint in the bankruptcy court, seeking the denial of French's petition to discharge his debts. The Complaint alleged that French had, inter alia, (1) knowingly made false oaths in connection with his bankruptcy petition, in contravention of 11 U.S.C. § 727(a)(4)(A); and (2) failed to keep or preserve recorded information from which his financial condition could be ascertained, in contravention of 11 U.S.C. § 727(a)(3). Following the filing of its Complaint, Peninsula, along with other creditors of French, filed a motion to transfer the Florida bankruptcy case to the District of Maryland for the convenience of the parties. The case was transferred on April 10, 2001.

On March 7, 2002, Peninsula moved for summary judgment on its Complaint, contending that French's bankruptcy petition should be denied on the grounds asserted in its Complaint. In support of its claim that French had knowingly made false oaths, Peninsula referred the bankruptcy court to several examples of inconsistent statements that French had made under oath in connection with his bankruptcy proceedings, including statements that he had subsequently acknowledged as inaccurate. More particularly, Peninsula focused on statements French had made concerning his entitlement to the Florida homestead exemption, whether he was a resident of Maryland or Florida, and his financial interests in several partnerships and investment groups. With regard to its claim that French had failed to keep and preserve adequate financial records, Peninsula relied on statements French had made indicating that he either had not kept or was unsure of the existence of certain records. These included records of the 1991 sale of New Cherokee Lanes, a corporation owned by French's wife; of any sources of income — other than Social Security benefits — that French may have had in 2000; of income he had received in 1998 and 1999; and of a 1991 transaction involving an entity called Chesapeake Group.

On March 28, 2002, French filed a memorandum opposing Peninsula's summary judgment motion. In responding to Peninsula's con-

---

mary judgment motion. *See Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004). The facts are drawn from the summary judgment record presented in the bankruptcy court.

tention on false oaths, French maintained that there was a genuine issue of material fact on whether he had knowingly and intentionally made any false statements. In this regard, French offered his own affidavit, asserting that he had always sought to be truthful in his testimony in the bankruptcy proceedings, and maintaining that any inconsistencies in the evidence were the result of confusion, his failure to understand certain questions he had been asked (in part because of his limited education — high school only — and unfamiliarity with legal terminology), and his inability to recall the information requested. French's affidavit also stated that he had been preliminarily diagnosed with a medical condition that affected his memory, his understanding of language, and his ability to give full, complete, and consistent testimony.

With regard to his financial records, French's affidavit asserted that, although he initially believed that he had lost many of the financial records sought, he eventually produced many of the records that Peninsula had alleged were missing. More specifically, French advised that he had disclosed: (1) complete bank records, including all checks, check registers, bank statements, and deposit tickets, from his Atlantic Bank checking account, which he had used for all business and personal transactions in 1998 and 1999; (2) records showing his personal monthly expenses for 1998, 1999, and 2000; (3) bank records for the two personal checking accounts he maintained in 2000; and (4) tax returns for 1998, 1999, and 2000. French also explained that, early in the bankruptcy proceedings, he had not known of the existence or whereabouts of many of these records, but that he had subsequently located and produced in 2001 substantially all of the records Peninsula and the trustee sought.

On April 17, 2002, French filed a pre-trial memorandum and attached two additional affidavits from proposed expert witnesses. French's first expert was Dr. Daniel J. Freedenburg, a psychiatrist who had examined French and whose affidavit specified that "Mr. French was suffering from a progressive disorder in the nature of a dementia which adversely impacts his cognitive functions and which is particularly intensified under stressful situations, such as testimony in a deposition or hearing." J.A. 1988.[2] Dr. Freedenburg further

---

[2] Citations to "J.A. ___" refer to the Joint Appendix filed by the parties in this appeal.

asserted in his affidavit that "[w]hile I am not yet prepared to label this disorder as Alzheimer's, I am of the opinion that Mr. French's apparent difficulties at times in recollection, in organizing thoughts, and even in keeping full and accurate records, derive from this disorder rather than from a lack of honesty or effort." *Id.* The Freedenburg affidavit continued: "This problem causes him at times to provide inaccurate and sometimes even contradictory responses to questions despite a desire and effort to be truthful, a symptom I personally observed during my examination." *Id.* Moreover, Dr. Freedenburg asserted that "[t]his problem also exhibits itself in Mr. French's inability at times to understand questions or terms used by a questioner in the same way as they are intended to be understood." *Id.*

French's second expert was Charles G. Fagan, a CPA, whose affidavit asserted that he had examined French's financial records and concluded that they were reasonably sufficient to determine French's financial condition for the years 1998 and 1999. More specifically, Fagan stated, "While Mr. French is not able to document all transactions in detail, . . . it is my opinion that the records he provided are sufficient to determine his financial condition in general terms without necessarily tracking each transaction." J.A. 1987. Fagan advised that he had not yet examined French's bank records for 2000 and thus had not formulated an opinion on the adequacy of French's records relating to that year.

On May 10, 2002, Peninsula filed an amended motion for summary judgment, asserting the same claims it had addressed in its earlier motion, and providing additional examples of inconsistent statements French had made in connection with his bankruptcy proceedings. On June 12, 2002, French filed a memorandum opposing Peninsula's amended summary judgment motion, again asserting that genuine issues of material fact were apparent on Peninsula's claims that he had knowingly made false oaths and that he had failed to keep and preserve adequate financial records. Several months later, on September 25, 2002, the bankruptcy court heard oral argument on Peninsula's amended summary judgment motion. At the conclusion of the argument, the court announced from the bench that it would grant Peninsula's motion for summary judgment and deny the discharge in bankruptcy sought by French.

## B.

More than two years later, on January 7, 2005, the bankruptcy court entered its Memorandum Opinion and Order awarding summary judgment to Peninsula and denying French the discharge he had sought. *See In re: French*, No. 01-5-6579-JS (Bankr. D. Md. Jan. 7, 2005) (the "Bankruptcy Opinion").[3] The Bankruptcy Opinion concluded that French had made false oaths and had failed to keep and preserve adequate financial records, and that each of those grounds warranted the denial of his discharge in bankruptcy. The court rejected French's position that the inaccuracies in his testimony were the result of misunderstandings and his impaired mental function, concluding that French was not credible and declining to give any weight to Dr. Freedenburg's affidavit. Specifically, the court explained that "[g]iven the importance of honesty in the administration of bankruptcy proceedings, this Court will not reward a dishonest debtor with the privilege of a discharge merely because of a doctor's excuse that the debtor is a compulsive liar." Bankruptcy Opinion 30. Additionally, the court asserted that "[t]he timing of the false statements alone is enough for this Court to determine that they were intended to reach a certain result." *Id.* at 31. The court, however, failed to assess whether a reasonable trier of fact, viewing the evidence in the light most favorable to French, would be entitled to conclude that his inconsistent statements were made innocently.

With respect to the claim concerning French's preservation of financial records, the bankruptcy court asserted that the condition of French's financial records had placed "an intolerable burden upon the Court, the trustee and the creditors of the estate to attempt a reconstruction of the financial affairs of the debtor and his various entities." Bankruptcy Opinion 23. Specifically, the court relied on deficiencies in records of the 1991 sale of New Cherokee Lanes and records of French's income in 2000. Furthermore, it concluded that French's initial denials that he had maintained the requested records "caused unreasonable delay and expense to creditors." *Id.* at 24. The court

---

[3]The Bankruptcy Opinion is found at J.A. 2731-64. The bankruptcy court did not specify therein any reasons for the two-year delay between the summary judgment argument and the Bankruptcy Opinion's issuance.

failed, however, to mention or assess the Fagan affidavit. Moreover, as with its evaluation of Peninsula's contention on false oaths, the court did not discuss whether a reasonable trier of fact, viewing the evidence in the light most favorable to French, would be entitled to find that French had satisfied his obligation with regard to financial records.

French thereafter appealed the bankruptcy court's rulings to the district court for the District of Maryland, pursuant to 28 U.S.C. § 158(a). On February 21, 2006, the district court entered its Memorandum Opinion and Order affirming the bankruptcy court. *See French v. Peninsula Bank*, No. 1:05-cv-00376-RDB (D. Md. Feb. 21, 2006) (the "District Court Opinion").[4] It agreed that no genuine issues of material fact existed concerning whether French had knowingly made false oaths and whether he had kept and preserved adequate financial records. *See* District Court Opinion 2. Although the district court also did not discuss the Fagan affidavit, it concluded that, according all reasonable inferences to French, the Freedenburg affidavit did not create a genuine issue of material fact with respect to Peninsula's claims. *See id.* at 10, 12.

French has timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a bankruptcy court's award of summary judgment and a district court's affirmance thereof. *In re Ballard*, 65 F.3d 367, 370 (4th Cir. 1995). In bankruptcy, summary judgment is governed in the first instance by Federal Rule of Bankruptcy Procedure 7056, which expressly incorporates into bankruptcy proceedings the standards of Federal Rule of Civil Procedure 56. A court may award summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999); *see also* Fed. R. Civ. Proc. 56(c) (providing that award of summary

---

[4]The District Court Opinion is found at J.A. 2770-84.

judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). In evaluating a summary judgment motion, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *Apex Express Corp.*, 190 F.3d at 633. In so doing, a court is not entitled to either weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."). If the moving party is unable to demonstrate the absence of any genuine issue of material fact, summary judgment is not proper and must be denied. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir. 2004).

## III.

Put simply, French contends on appeal that the bankruptcy court erred in failing to apply the applicable summary judgment principles in its evaluation of Peninsula's motion. More specifically, French asserts that a genuine issue of material fact exists as to each of Peninsula's grounds for the denial of his discharge petition, and that summary judgment was thus inappropriate. We address in turn the rulings of the Bankruptcy Opinion on Peninsula's two claims — that French knowingly made false oaths and that he failed to keep and preserve adequate financial records.

## A.

French first contends that the bankruptcy court erred in awarding summary judgment on the basis of Peninsula's claim that he knowingly made false oaths during his bankruptcy proceedings. The Bankruptcy Code provides that a debtor seeking Chapter 7 relief shall be granted a discharge of his debts unless "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). In order to be denied a discharge under this provision, "the debtor must have made a statement

under oath which he knew to be false, and he must have made the statement willfully, with the intent to defraud." *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987). Significantly, in evaluating a claim under § 727(a)(4)(A), we have recognized that the question of whether a debtor has made a false oath is generally a question of fact. *See id.*

On appeal, French focuses on the essential element of intent, maintaining that a genuine issue of material fact is present on whether he made any false statements with an intent to defraud. In particular, French points to his personal affidavit, in which he maintains that any inaccurate or inconsistent statements he made under oath in the bankruptcy proceedings were the result of confusion or impaired mental function. He also relies on Dr. Freedenburg's affidavit, in which French's psychiatrist opined that French suffers from a progressive cognitive disease that makes it difficult for him to answer questions accurately. Based on these affidavits, French contends that a genuine issue exists as to whether he possessed the intent to defraud essential for a denial of discharge under § 727(a)(4)(A).[5]

Notwithstanding the evidence forecast by these affidavits, the bankruptcy court concluded that there was no genuine issue of material fact as to French's intent to defraud. In so ruling, the court made several points. First, the court observed that the timing of French's inaccurate statements indicated that they were made with an intent to

---

[5]Peninsula maintains that the Freedenburg and Fagan affidavits should be excluded from consideration on summary judgment for two reasons. First, it asserts that they are not part of the summary judgment record because they were submitted as attachments to French's pre-trial memorandum rather than with his memorandum in opposition to summary judgment. Peninsula, however, failed to object to these affidavits during the summary judgment proceedings, and the Freedenburg affidavit was discussed at length at the summary judgment argument. Second, Peninsula asserts that the affidavits should not be considered because they were not made on personal knowledge, as required by Federal Rule of Civil Procedure 56(e). As the affidavits reflect, however, they were each based upon personal observations — in the case of the Freedenburg affidavit, Dr. Freedenburg's personal examination of French; and in the case of the Fagan affidavit, Fagan's personal examination of French's financial records.

defraud. Second, the court made known that it simply disbelieved the Freedenburg affidavit, describing it as "a doctor's excuse that the debtor is a compulsive liar." Bankruptcy Opinion 30. Third, the court indicated that, even if the Freedenburg affidavit was correct, it would nonetheless deny French a discharge because of "the importance of honesty in the administration of bankruptcy proceedings." *Id.*

In these circumstances, we conclude that the bankruptcy court erred and that a genuine issue of material fact exists on whether French made false statements in his bankruptcy proceedings with an intent to defraud. Although the court evaluated French's affidavit and the Freedenburg affidavit, it did not address the question central to the assessment of Peninsula's summary judgment motion: whether a reasonable trier of fact, viewing the evidence in the light most favorable to French, could have found that he lacked the fraudulent intent necessary to deny him a discharge under § 727(a)(4)(A). *See In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999) (recognizing that court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant"). Viewing the evidence in the light most favorable to French (the non-moving party), a reasonable factfinder could, in this case, readily conclude that French lacked the requisite intent to make false oaths. This is particularly so in light of the expert medical evidence indicating that French's inaccuracies were likely the result of a mental impairment, plus French's own affidavit that he did not intend to mislead the court.[6]

In its ruling, the bankruptcy court also made credibility determinations which are not appropriate in a court's assessment of a motion for summary judgment. We have recognized that, in evaluating a § 727(a)(4)(A) claim, "a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor." *Williamson*, 828 F.2d at 252. In awarding summary judgment to Peninsula, the bankruptcy court made credibility determinations on both French's and Dr. Freedenburg's proffered testimony,

---

[6]We note that there were no counter-affidavits filed by Peninsula to contradict the opinions of Dr. Freedenburg. Furthermore, there was no proffered evidence that the debtor was a "compulsive liar."

and specifically rejected their testimony as unreliable. In the summary judgment context, a court is simply not empowered to make such determinations. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations . . . are jury functions, not those of a judge . . . ."). In these circumstances, the bankruptcy court erred in awarding summary judgment to Peninsula on the ground that French made false oaths during his bankruptcy proceedings.[7]

## B.

French next contends that the bankruptcy court erred in awarding summary judgment on the basis of Peninsula's claim that he had failed to keep and preserve adequate financial records. The Bankruptcy Code provides that a debtor seeking Chapter 7 relief shall be granted a discharge of his debts unless

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, includ-

---

[7]With respect to whether Dr. Freedenburg's affidavit qualifies as such under Rule 56(e), as discussed by our concurring colleague, we can respond simply: Peninsula has never challenged the "affidavit" (so denominated on the face thereof) — either in the bankruptcy court, the district court, or in its briefs or oral argument in this appeal — on the basis that it may be deemed unsworn. In fact, the bankruptcy and district courts' opinions each considered that submission in connection with the summary judgment issue and treated it as an "affidavit." *See* Bankruptcy Opinion 29; District Court Opinion 9. Thus, we have no reason to *sua sponte* reject Dr. Freedenburg's affidavit as unsworn. *See In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 437 n.12 (3d Cir. 1996) (considering unsworn affidavit when party did not move to strike it in lower court); *Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994) (same); *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 114 (2d Cir. 1987) (same); *McCloud River R.R. Co. v. Sabine River Forest Prods., Inc.*, 735 F.2d 879, 882 (5th Cir. 1984) (same); *Noblett v. Gen. Elec. Credit Corp.*, 400 F.2d 442, 445 (10th Cir. 1968) (same). With no such contention having been raised on appeal, this issue is not even subject to plain error review — it has been waived. As a result, we are unable to agree with our concurring colleague on this point, for to do so would sanction our use of a roving writ to ferret out possible error that counsel has already determined not to pursue.

> ing books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). Thus, a party objecting to a bankruptcy discharge petition on this basis must make an initial showing that (1) the debtor failed to keep and preserve adequate financial records, and (2) such a failure makes it impossible to ascertain the debtor's financial condition. *See* § 727(a)(3); *see also Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992).

On appeal, French contends that there is a genuine issue of material fact on whether he maintained adequate records from which his financial condition could be ascertained. In assessing this contention, we must first review the obligations of a debtor under § 727(a)(3). Although we have not heretofore addressed this specific point in a published decision, several other courts of appeals have done so.[8] These courts have consistently determined that a debtor's books "need not be perfect nor follow any particular system." *Noroian v. Hern*, 422 F.2d 1092, 1094 (9th Cir. 1970); *see also In re Schifano*, 378 F.3d 60, 69 (1st Cir. 2004) (concluding that Bankruptcy Code does not require perfect bookkeeping); *Meridian Bank*, 958 F.2d at 1230 ("The Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account, nor does it require an impeccable system of bookkeeping.").

The essential requirement of § 727(a)(3) under these authorities is, as the Third Circuit has explained, that the records "sufficiently identify the transactions so that intelligent inquiry can be made of them. The test is whether there is available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained." *Meridian Bank*, 958 F.2d at 1230 (internal quotation

---

[8]In *In re: Shigo*, we reasoned that a debtor is not required under § 727(a)(3) to maintain perfect financial records. *See* No. 95-1959, 1996 WL 405223, at *2 (4th Cir. July 19, 1996). Rather, we explained that a debtor need "just provide the trustee with the records he has, and, if he has none, give an explanation as to why." *Id.*

marks omitted); *see also Schifano*, 378 F.3d at 69 (concluding that records preserved must reasonably allow court and parties to ascertain accurate picture of debtor's financial affairs); *Noroian*, 422 F.2d at 1094 ("All that is required is that a competent accountant should be able to determine from such books and records the financial condition of the bankrupt."); *In re Green*, 202 B.R. 68, 71 (Bankr. D. Md. 1996) ("The appropriate inquiry is whether the debtor kept records which would allow creditors to ascertain the debtor's present financial condition and business transactions over a reasonable period of time. The Bankruptcy Code does not demand perfection, but it does require debtors to maintain records in a manner that is reasonable under the circumstances of the particular case." (internal citations omitted)); *In re Baxter*, 96 B.R. 58, 60 (Bankr. E.D. Va. 1989) ("A debtor's records must at least reasonably allow for the reconstruction of the debtor's financial condition to meet the requirements of the Bankruptcy Code." (internal quotation marks omitted)). We are content with the principle that a bankruptcy debtor is not required to maintain perfect records. A debtor is, however, obliged by the statute to preserve sufficient and adequate financial records to enable the court and the parties to reasonably ascertain an accurate picture of his financial affairs.

Although the parties did not take issue with the foregoing principle, Peninsula makes two contentions on appeal concerning its applicability to the circumstances of French's discharge petition. First, Peninsula contends that it is entitled to summary judgment on its inadequate records claim because French was a sophisticated debtor and thus should be held to a higher standard. In the Bankruptcy Opinion, the bankruptcy court agreed on that point. The court then determined that, because it found French to be a sophisticated businessman, he should have better maintained his business records. Although the sophistication factor may be important in assessing a denial of discharge under § 727(a)(3), whether French was a sophisticated debtor was itself a contested fact, and such a finding does not, in any event, justify an award of summary judgment to Peninsula. Instead, as the Third Circuit explained, the level of a debtor's sophistication is simply another factor that a trier of fact may take into account in determining whether a debtor maintained sufficient records. *See Meridian Bank*, 958 F.2d at 1231 (concluding that Bankruptcy Code requires trier of fact to make determination on adequacy of debtor's records and his justification for not maintaining certain

records based on all circumstances, including "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice" (internal quotation marks omitted)).

Next, Peninsula contends that it is entitled to summary judgment on its inadequate records claim because French did not disclose the requested financial records in a timely fashion. Specifically, it contends that, although French eventually produced an abundance of records, such production occurred after he had already informed the trustee that he believed the requested records had been destroyed or that they did not exist. Thus, Peninsula asserts that the bankruptcy court properly ruled that "by denying the existence of certain records that were later produced by his attorney . . . , French caused unreasonable delay and expense to creditors who were entitled to have him make full disclosure of his financial records." Bankruptcy Opinion 24. Again, whether the timeliness of a debtor's disclosure of records caused a delay for the parties in adequately ascertaining his financial condition is a factor that a trier of fact may assess in its determination as to whether he has satisfied the standard of § 727(a)(3).[9]

Finally, we must assess whether there is a genuine issue of material fact concerning whether the records French disclosed would permit

---

[9]We are not opining here that an award of summary judgment should never be granted under § 727(a)(3) on the basis of a debtor failing to produce requested financial records within a reasonable time. In this case, however, Peninsula failed to show that the timing of French's financial disclosures caused any unreasonable delay and expense, and thus it cannot be awarded summary judgment on this ground as a matter of law. *See* Fed. R. Civ. P. 56(c) (providing that award of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). More specifically, Peninsula did not demonstrate, by affidavit or otherwise, when French was obliged to disclose such records, how long he waited in fulfilling such requests, or that Peninsula was not able to reasonably ascertain French's financial condition because of a delay in producing requested records.

the parties to reasonably ascertain his financial condition. French asserts that, although his records are not complete, there is a question of fact as to whether an accurate picture of his financial affairs can be developed. In so maintaining, French points to his affidavit, where he explains that, despite his statements in earlier proceedings that there were significant gaps in his record-keeping, he ultimately was able to produce records of his income, expenses, and banking transactions for several years prior to the filing of his bankruptcy petition. French also points to the Fagan affidavit, where his expert asserts that the records are sufficient to ascertain his financial condition (except, perhaps, for the year 2000). Based on these affidavits, French contends that a genuine issue of fact exists on whether he adequately kept and preserved his financial records.

Notwithstanding the evidence forecast by French, the bankruptcy court ruled against him, concluding that there was no genuine issue of material fact on whether he had kept and preserved adequate records. In so doing, the court determined that the condition of French's financial records had placed "an intolerable burden upon the Court, the trustee and the creditors of the estate to attempt a reconstruction of the financial affairs of the debtor and his various entities." Bankruptcy Opinion 23. It then relied on deficiencies in the records concerning the 1991 sale of New Cherokee Lanes and French's income in 2000.

In the circumstances presented, we are constrained to disagree with the bankruptcy court, and conclude that it erred on this aspect of the discharge petition as well. Viewing the evidence in the light most favorable to French, a reasonable factfinder could find that the records produced by French were sufficient to permit an assessment of his financial condition and that, to the extent French had failed to produce certain records, such failure was justified in the circumstances. Specifically, with regard to his 2000 income, French's affidavit maintains that he had produced his 2000 banking and income tax records. And, with respect to the 1991 New Cherokee Lanes transactions, a reasonable factfinder could conclude that the absence of such possibly outdated records was justified by the time factor involved. Furthermore, French presented evidence, through the Fagan affidavit (which the bankruptcy court failed to mention or assess), that an

accountant could reasonably ascertain his financial condition based upon the records he produced.[10]

## IV.

Pursuant to the foregoing, we vacate and remand to the bankruptcy court for such other and further proceedings as may be appropriate.[11]

*VACATED AND REMANDED*

WHITNEY, District Judge, concurring in part and concurring in the judgment:

With the exception of Section A of Part III, I concur in the majority opinion. As to Section A of Part III, I concur in the result reached by the majority, but write separately to express my concerns with the reasoning in that portion of the majority opinion's analysis.

The majority opinion not only concludes that Dr. Freedenburg's "affidavit" constitutes "expert medical evidence," but further concludes the affidavit creates a genuine issue of material fact regarding French's knowledge and intent to defraud. Although I agree that a

---

[10]Had the bankruptcy court conducted a bench trial on either of the claims made by Peninsula, it would have been entitled to make such findings of fact as it did in the Bankruptcy Opinion. Critically, however, the court disposed of Peninsula's Complaint on summary judgment. It therefore was not authorized to weigh the evidence, make credibility determinations, or draw inferences unfavorable to French. *See Anderson*, 477 U.S. at 255.

[11]French makes two additional contentions on appeal. First, he asserts that the bankruptcy court erred in granting Peninsula's motion to supplement its Complaint so that it would more fully comply with the pleading requirements of Federal Rule of Civil Procedure 9(b). On this point, we are satisfied that the bankruptcy court did not abuse its discretion in allowing Peninsula to supplement its Complaint. *See Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002). Second, French asserts that the bankruptcy court erred in considering two related bankruptcy court opinions, which involved his claim of a Florida homestead exemption and his wife's bankruptcy proceeding. Because we vacate and remand, we need not reach this contention.

genuine issue of fact exists on the issue of fraudulent intent, I disagree that this issue of fact was created by Dr. Freedenburg's statement. The statement fails to comply with the requirements of Rule 56(e) and therefore should not be considered. Peninsula's failure to object to Dr. Freedenburg's "affidavit" at the summary judgment hearing did not require the bankruptcy court to consider or give credit to it. *CMS Industries, Inc. v. L.P.S. Inern., Ltd.*, 643 F.2d 289, 295 (5th Cir. 1981). Contrary to the majority's suggestion in footnote 7, it should in no way prejudice Peninsula, as the appellee and party seeking to sustain the judgment below, that the courts below properly disregarded Dr. Freedenburg's statement, notwithstanding Peninsula's failure to object.

Thus, I cannot join the majority opinion because it results in a ruling that not only suggests that the bankruptcy court had to consider Dr. Freedenburg's "affidavit," but also goes so far as to say the bankruptcy court should have denied summary judgment based on the assertions contained therein. Instead, I concur in the result reached by the majority opinion because the evidence contained in the record — circumstantial or otherwise — is insufficient to conclude at the summary judgment stage that French possessed the requisite fraudulent intent.

I.

Rule 56(e) of the Federal Rules of Civil Procedure provides that when affidavits are used to support or oppose a summary judgment motion, they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." These requirements are mandatory. 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2738 (3d ed. 2007).

Dr. Freedenburg's statement was neither sworn under oath nor made under the penalty of perjury. As a result, the statement fails to meet the most basic requirement of form required by Rule 56(e). *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17 (1970) (noting that unsworn statement in support of motion for summary judgment did not meet the requirements of Fed. R. Civ. P. 56(e)); *see also* 28

U.S.C. § 1746 (setting forth requirements for declarations and affidavits submitted to the court). Second, Dr. Freedenburg's statement does not set forth facts that would be admissible in evidence because nowhere does Dr. Freedenburg state that his opinions are based on a reasonable degree of medical certainty. *See Fitzgerald v. Manning*, 679 F.2d 341, 351 (4th Cir. 1982) (recognizing "the [expert] opinion testimony may not be stated in general terms but must be stated in terms of a 'reasonable degree of medical certainty'"). Finally, Dr. Freedenburg's statement does not show affirmatively that he is competent to testify to the matters stated therein. In fact, by his own statement, Dr. Freedenburg concedes he is unable — or incompetent — to testify to the opinions provided. For example, Dr. Freedenburg recommended French seek additional medical assistance to "define more definitely the nature of [French's] problem . . . ."

Not only does Dr. Freedenburg's statement not comply with the standards of Rule 56(e), but the statements hardly constitute "expert medical evidence" sufficient to create an issue of fact. No facts appear on the face of the statement that suggest Dr. Freedenburg's opinions might withstand reliability analysis under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Dr. Freedenburg's statement contains nothing but general unsworn assertions setting forth possible causes for French's inconsistent statements. Accordingly, I agree with the bankruptcy court's decision to disregard the "affidavit" and the purported "doctor's excuse" contained therein.

## II.

Notwithstanding the fact the bankruptcy court properly disregarded Dr. Freedenberg's statement, "[s]ummary judgment is not . . . an automatic sanction for non-compliance with Rule 56(e). A movant must establish the propriety of relief by the strengths of his own showing, not by the defects in his opponents' showing." *Jackson v. Mississippi*, 644 F.2d 1142, 1144 (5th Cir. 1981). I would hold that Peninsula failed to carry its burden to show no genuine issue exists as to whether French possessed the requisite fraudulent intent to make his debt nondischargeable.

Peninsula argued, and the bankruptcy court and district court agreed, that French's pattern of making materially false statements

evidenced fraudulent intent sufficient to show French "knowingly and fraudulently" made false oaths. The bankruptcy court based its ruling on *In Re Sholdra*, 249 F.3d 380 (5th Cir. 2001), which noted, "[T]he cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth [to support] fraudulent intent." *Id.* at 383 (quoting *Economy Brick Sales, Inc. v. Gonday (In re Gonday)*, 27 B.R. 428, 432 (Bankr. M.D. La.1983)) (alteration in original). *Sholdra* is distinguishable from the case at bar. There, the court upheld a denial of discharge under § 727(a)(4)(A) because the debtor "remained silent and did not present any facts creating genuine issues of material fact" regarding his intent to defraud. *Id.* at 383. Here, French did not "remain silent" and instead proffered testimony and an affidavit to demonstrate such lack of intent.

Recognizing that the law on summary judgment is well-settled, it bears repeating that summary judgment should be granted only where it is clear that there is no dispute about the facts or inferences to be drawn therefrom. Fed. R. Civ. P. 56(c). Furthermore, the court must view the evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not the role of the trial court to weigh the evidence or to determine its credibility, and the moving party cannot prevail if any essential element of its claim for relief requires trial. *Id.* Here, the bankruptcy court appears to have disregarded the procedural posture of the case and the summary judgment principles that give French the benefit of all reasonable inferences.

Although it is uncontroverted that French made inconsistent statements, the presence of conflicting testimony, without more, does not inherently establish fraudulent intent. This is especially true at the summary judgment stage where French has not "remained silent," has specifically denied having an intent to defraud, and has proffered explanations for his conflicting statements that he was oftentimes confused or misunderstood the question asked. *See Simas v. First Citizens' Federal Credit Union*, 170 F.3d 37 (1st Cir. 1999) ("[T]he competence of the nonmovant's own testimony is treated no differently than that of any other potential trial witness."). By disregarding French's explanations and denial, the bankruptcy court was, in effect, weighing the evidence and making credibility determinations — all while failing to give French the benefit of all reasonable inferences.

While the bankruptcy court is entitled to make these types of decisions following a bench trial, it was inappropriate to make such findings of fact and resolve such conflicts in the evidence on summary judgment.

For these reasons, as well as those stated in Section B of Part III of the majority opinion, I concur in the result to vacate the judgment and remand.