**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————

**No. 03-2148**

—————

ERNESTO ACEVEDO GUERRA,

                                 Plaintiff - Appellant,

        versus

MONTGOMERY COUNTY, MARYLAND; RICHARD HARRIS,

                                 Defendants - Appellees.

—————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Richard D. Bennett, District Judge.  (CA-
02-1995-RDB)

—————

Argued:  October 29, 2004          Decided:  December 7, 2004

—————

Before WILKINSON, MICHAEL, and KING, Circuit Judges.

—————

Affirmed by unpublished per curiam opinion.

—————

**ARGUED:** Jonathan Christian Dailey, DAILEY & ASSOCIATES, CHTD.,
Washington, D.C., for Appellant.  Sharon Veronica Burrell, COUNTY
ATTORNEY'S OFFICE FOR THE COUNTY OF MONTGOMERY, Rockville,
Maryland, for Appellees.  **ON BRIEF:** Charles W. Thompson, Jr.,
County Attorney, Patricia P. Via, Associate County Attorney,
Rockville, Maryland, for Appellees.

—————

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Ernesto Acevedo Guerra sued Montgomery County, Maryland, and Officer Richard Harris in his official capacity asserting, among other things, Section 1983 claims premised on the violation of his constitutional rights. The complaint alleges that Guerra's rights under the Fourth Amendment were violated when Harris unintentionally shot him in the face during a so-called "dynamic extraction" while the stolen vehicle driven by Guerra was stopped at an intersection. The district court granted the defendants' motion for summary judgment on Guerra's Section 1983 claims on the basis that no underlying federal constitutional violation had occurred. We affirm the district court's order, but we do so on the alternative basis that Guerra has not raised an issue of material fact with respect to the county's failure to provide adequate training to its police officers.

I.

We state the facts in the light most favorable to Guerra, the non-prevailing party in the summary judgment proceedings. See EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 375 (4th Cir. 2000). On the afternoon of January 31, 2002, Officer Harris was on duty as an undercover auto theft detective along with other plainclothes officers of the Central Auto Theft Team of the Montgomery County Police Department. The officers located a stolen Honda Civic

2

parked in a Silver Spring apartment complex and began surveillance of the vehicle. Eventually, Detective Thomas Reich saw Guerra enter the Honda and drive away. The detective radioed this information to the other officers, who proceeded to follow the Honda in several unmarked police cars. Before long, when Guerra had to stop for a red light at an intersection, the officers decided to confront him using the dynamic extraction technique. In Montgomery County, dynamic extraction involves the positioning of unmarked police cars in such a way as to block a suspect's vehicle and prevent its movement. Plainclothes officers then quickly approach the suspect and physically remove him from or order him out of the vehicle. It is unclear how the decision was made to confront Guerra by using dynamic extraction at a busy intersection.

As Guerra pulled up to the intersection in the stolen Honda, Officer Harris stopped his car immediately behind. Detective Michael Chaconas pulled his car into the median along the driver's side of the Honda. Sergeant Michael Sugrue positioned his car in front of the civilian vehicle that was directly in front of the Honda. Several other civilian vehicles were in the traffic lane next to the Honda's passenger's side. Officer Harris then got out of his car with his gun drawn and approached the driver's side door of the Honda. In the course of his approach, Harris struck the Honda's rear quarter panel with his hand, advised Guerra that he was a police officer, and ordered Guerra to raise his hands.

3

Guerra released his hands from the steering wheel and raised them, which Harris considered an act of compliance. Harris continued toward the driver's side door with his firearm in a downward position. As he approached, Harris raised his firearm from the downward position and pointed it in Guerra's general direction. As Harris reached to open the door, his weapon discharged. The bullet shattered the driver's side window and struck Guerra in the face. All parties agree that Harris did not pull the trigger intentionally.

Guerra filed a complaint against Montgomery County and Officer Harris in his official capacity in the United States District Court for the District of Maryland on June 13, 2002. Guerra alleges that Harris, by using excessive force, and Montgomery County, by failing to train its officers adequately, violated his Fourth Amendment (and other constitutional) rights. Guerra seeks relief under 42 U.S.C. § 1983 and state law. Upon completion of discovery, the defendants moved for summary judgment on all claims. The district court granted the motion in part and dismissed Guerra's Section 1983 claims with prejudice. The court declined to exercise pendent jurisdiction over the state law claims and dismissed them without prejudice.

The district court concluded that Guerra's Section 1983 claims failed for several reasons. The court construed the complaint to allege that Harris violated Guerra's Fourth Amendment

4

rights by simultaneously approaching the Honda with his weapon drawn and attempting to open the driver's side door. Because there was probable cause to stop the car, the court said, it was both reasonable and lawful for Harris to approach the Honda with his weapon drawn. Moreover, the court concluded that no constitutional violation occurred as Harris approached the car because Guerra suffered no injury until the gun discharged. The district court presumably believed that the shooting itself did not violate the Fourth Amendment because it was accidental. This appeal followed.

## II.

To prevail on his federal claim, Guerra must show that (1) an underlying constitutional violation (2) resulted from a Montgomery County policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). The use of excessive force violates the Fourth Amendment's protection against unreasonable seizures. See Jenkins v. Averett, 424 F.2d 1228, 1231-32 (4th Cir. 1970). And, a county's failure to adequately train its officers can be so egregious as to warrant a finding that it amounts to a policy or custom for which the county should be held responsible. See City of Canton v. Harris, 489 U.S. 378, 389-90 (1989). As we will explain, Guerra has not raised an issue of material fact with respect to his assertion that a county practice of inadequate training led to a constitutional violation. We affirm on this

5

alternative basis, even though it was not addressed by the district court.  See Ostrzenski v. Seigel, 177 F.3d 245, 253 (4th Cir. 1999) (noting that we may affirm on any ground supported by the record, even if it is not one relied on by the district court).

As an initial matter, Guerra does not allege a pattern of unconstitutional police conduct so pervasive as to imply actual or constructive knowledge on the part of Montgomery County policymakers.  Rather, on the basis of a single shooting incident, he argues that the county's police training programs for proper trigger finger placement and the use of dynamic extraction are constitutionally deficient and reflect such deliberate indifference to the risk of injury that the deficiencies themselves may be properly considered county policy or custom.  Guerra relies on the statements of a single expert witness to support his claim of deficient training.

With respect to training on trigger finger placement, the expert concedes that Harris received a certain amount of training on this subject and that this training even included some exercises designed to approximate high-stress situations.  The fact that Harris may have deviated from his training is insufficient to render Montgomery County's training programs involving proper trigger finger placement constitutionally inadequate as a general proposition.  Ultimately, the expert believes Harris did not receive enough high-stress training on trigger finger placement.

6

Under City of Canton, 489 U.S. at 390-91, however, the fact that more or better training could have been instituted is not enough by itself to establish a claim for deliberate indifference.

With respect to training in dynamic extraction vehicle takedowns, Guerra's expert also concedes that Harris received some training in this area. The expert nevertheless maintains that the county's training plan for this procedure is fundamentally flawed. Yet, the expert acknowledges that he is generally unfamiliar with undercover auto theft units and their use of the dynamic extraction technique. As a result, his statements do not create an issue of material fact about the inadequacy of Montgomery County's program for training its undercover auto theft detectives in the use of dynamic extraction. Specifically, the expert's statements cannot sustain the proposition that training deficiencies represent county policy or custom because any such deficiencies are not sufficient to establish the necessary deliberate indifference.

For these reasons, we affirm the judgment of the district court.

AFFIRMED