**Mark Jacob JONES, Plaintiff,**

v.

**WESTERN TIDWATER REGIONAL JAIL, et al., Defendants.**

**ACTION NO. 2:15cv316**

United States District Court,
E.D. Virginia,
**Norfolk Division.**

Signed May 6, 2016

Mark Jacob Jones, Littleton, CO, pro se.

Jonathan Lewis Stone, Norris & St. Clair PC, Virginia Beach, VA, for Defendants.

### MEMORANDUM ORDER

Mark S. Davis, UNITED STATES DISTRICT JUDGE

Plaintiff, a federal inmate, filed this *pro se* action pursuant to 42 U.S.C. §§ 1981, 1983, and 1985 to redress alleged violations of his constitutional rights while he was a pretrial detainee at the Western Tidewater Regional Jail ("WTRJ"). Relevant to this Order, Plaintiff asserts that Defendants Aramark[1] and Ken Peare[2] (collectively, "Defendants") violated his First and Eighth Amendment rights, as well as his rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.*, by failing to provide him with a diet consistent with his Rastafarian religion and by failing to provide a diet consistent with his medical needs. (Second Am. Compl. at 4–5, ECF No. 46.) Plaintiff seeks monetary damages, as well as de-

---

**1.** Although Aramark is a private corporation, the United States Court of Appeals for the Fourth Circuit has "assume[d] without deciding that ARAMARK[, a private corporation,] act[s] under color of state law for purposes of § 1983 by performing the traditional governmental function of providing food service at [correctional facilities]." *Coleman v. ARAMARK*, 31 Fed.Appx. 808, 809 (4th Cir.2002) (citing *West v. Atkins*, 487 U.S. 42, 54–56, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)).

**2.** Plaintiff named "Mr. Keare" as a Defendant in this matter. However, Defendants' pleadings clarify that the proper name of this Defendant is Ken Peare. Accordingly, the Clerk will be **DIRECTED** to update the docket to reflect the proper name of this Defendant.

claratory and injunctive relief. (*Id.* at 11–12.)

## I. *Procedural History*

By Order entered on July 23, 2015, the Court directed Plaintiff to respond to interrogatories designed to particularize his claims. (ECF No. 4.) In response to the Court's Order, Plaintiff filed an Amended Complaint. (ECF No. 6.) Subsequently, Defendants WTRJ and Parham filed a motion for summary judgment. (ECF No. 28.) By Order entered on February 17, 2016, the Court granted the motion for summary judgment filed by WTRJ and Parham, and dismissed Plaintiff's claims pursuant to 42 U.S.C. §§ 1981 and 1985. (ECF No. 44 at 9.) The Court also denied Plaintiff's request for leave to amend his Amended Complaint without prejudice to Plaintiff's "right to file a motion for leave to amend that is accompanied by the proposed Amendment." (*Id.*) Finally, the Court ordered that any party who had appeared and who desired to file a dispositive motion should do so within forty-five (45) days. (*Id.*)

The Court received Plaintiff's Second Amended Complaint on February 22, 2016. (ECF No. 46.) By Order entered on February 25, 2016, the Court granted Plaintiff s request for leave to amend to add Doctors Graham and Butler as Defendants. (ECF No. 47.) Subsequently, Plaintiff filed a motion for summary judgment regarding his claims against Defendants Aramark and Peare. (ECF No. 48.) On March 21, 2016, Defendants filed an opposition to Plaintiff's motion (ECF No. 50), and also filed their own motion for summary judgment, and a memorandum and affidavit in support thereof (ECF Nos. 50, 51, 52). Pursuant to *Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir.1975),

Plaintiff was given an opportunity to respond to the motion with any material that he wished to offer in rebuttal. Plaintiff was advised that failure to submit any materials could result in an adverse judgment based on the motion and accompanying affidavits and exhibits. Plaintiff then submitted a response. The motions are now ripe for judicial consideration.[3]

## II. *Summary Judgment Standard*

Summary judgment is appropriate only when a court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.,* 377 F.3d 408, 418 (4th Cir.2004). The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. *Honor v. Booz–Allen & Hamilton, Inc.,* 383 F.3d 180, 185 (4th Cir.2004); *McLean v. Patten Cmts., Inc.,* 332 F.3d 714, 718 (4th Cir. 2003); *see Celotex Corp.,* 477 U.S. at 322–25, 106 S.Ct. 2548. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Honor,* 383 F.3d at 185; *McLean,* 332 F.3d at 718–19. Such facts must be

---

**3.** Defendants Graham and Butler have also filed a response opposing Plaintiff's motion for summary judgment. (ECF No. 61.) However, because Plaintiff's motion for summary judgment is directed solely towards his claims against Defendants Aramark and Peare, the Court declines to consider this response in its analysis of the instant motions.

presented in the form of exhibits and sworn affidavits. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548; *see also M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir.1993). Failure by a plaintiff to rebut a defendant's motion with such evidence on his behalf will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.[4]

Although a court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir.2002); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 330 F.Supp.2d 668, 671 (E.D.Va.2004). Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

In support of their motion for summary judgment, Defendants have submitted an Affidavit from Wendy A. Johnson, a Registered Dietitian employed by Aramark (Mem. Supp. Defs.' Mot. Summ. J. Ex. 1 ("Johnson Aff."), ECF No. 52–1).

At this stage, the Court must determine whether Plaintiff "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir.1993) (emphasis added). With respect to the Second Amended Complaint itself, the Court notes that Plaintiff failed to swear to the contents of his Second Amended Complaint under penalty of perjury, and therefore the Second Amended Complaint fails to constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir.2004).

Plaintiff attached to both his motion for summary judgment and his opposition to Defendants' motion for summary judgment copies of various medical records. Plaintiff has not authenticated these medical records. Prior to 2010, the United States Court of Appeals for the Fourth Circuit noted that "[i]t is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir.1993) (citation omitted). However, *Orsi* was " 'superseded by an amendment to Rule 56' " in 2010. *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F.Supp.3d 398, 407 (D.Md.2015) (quoting *Wonasue v. Univ. of Maryland Alumni Ass'n*, No. 11–3657, 2013 WL 5719004, at *8 (D.Md. Oct. 17, 2013)); *accord Humphreys & Partners Architects, L.P. v. Lessard Design Inc.*, 790 F.3d 532, 539 n. 4 (4th Cir.2015) (noting that the 2010 amendments eliminated the requirement that documents submitted in support

---

4. Amendments to the Federal Rules of Civil Procedure, which became effective on December 1, 2010, moved the relevant language from section (c)(2) of Rule 56 to its present location in section (a). However, the advisory committee's note indicates that, despite these amendments, "[t]he standard for granting summary judgment remains unchanged." Fed.R.Civ.P. 56 advisory committee's note.

of summary judgment must be authenticated).

■ Under the current version of Rule 56 of the Federal Rules of Civil Procedure, therefore, "facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the new requirement is that the party identifies facts that *could be* put in admissible form." *Wake v. Nat'l R.R. Passenger Corp.*, No. 12–1510, 2013 WL 5423978, at *1 (D.Md. Sept. 26, 2013) (emphases in original) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. 11–3415, 2013 WL 2919705, at *1 n. 1 (D.Md. June 12, 2013)). Thus, instead of "a clear, bright-line rule ('all documents must be authenticated')," Rule 56(c)(2) [5] now prescribes a "multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method [of] doing so at trial." *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 10–1144, 2011 WL 5169384, at *2 (W.D.Mich. Oct. 31, 2011). Notably, "the objection [now] contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *Ridgell v. Astrue*, No. DKC 10–3280, 2012 WL 707008, at *9 (D.Md. Mar. 2, 2012) (quoting *Foreword Magazine*, 2011 WL 5169384, at *2).

As noted above, Plaintiff has not submitted the medical records in admissible form. However, these medical records could be admissible if they were accompanied by an affidavit from the custodian of the records to authenticate the records and establish that they were kept in the course of regular business. *See* Fed.R.Evid. 803(6). Therefore, because Defendants have not "object[ed] that the materials" submitted "cannot be presented in a form that would be admissible in evidence," and because the Court perceives no reason why such medical records could not be authenticated if Plaintiff was called upon to do so, the Court could consider their contends undisputed for purposes of the summary judgment motion. Fed.R.Civ.P. 56(c)(2), (e)(2); *see Prout v. PRG Real Estate Mgmt., Inc.*, 51 F.Supp.3d 702, 705 n. 2 (E.D.Ky.2014) (citation omitted) ("Generally, when a party fails to object to evidentiary materials submitted by the opposing party in support of summary judgment, such objections are deemed waived.").

Nevertheless, this matter is before the Court now solely on Plaintiff's claims against Aramark, the food service provider at WTRJ, and Peare, the kitchen supervisor at WTRJ. While the medical records Plaintiff has submitted may be relevant to Plaintiff's claims against Defendants Graham and Butler, they are not relevant to Plaintiff's claims against Aramark and Peare. Accordingly, the Court has not considered these medical records in connection with the motions for summary judgment addressed in this Order. The following facts are established for purposes of considering the motions for summary judgment.

### III. *Facts*

Johnson is a Registered Dietitian employed by Aramark as the Director of Nutrition and Operational Support Services

**5.** Rule 56(c)(2) states: "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). However, under Rule 56(e)(2), when a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court can "consider the fact undisputed for purposes of the motion." Fed. R.Civ.P. 56(e)(2); *see Toure v. Ubom*, No. 3:10CV744–HEH, 2011 WL 1044901, at *1 n. 1 (E.D.Va. Mar. 16, 2011) (noting that Rule 56(e)(2) "permit[s] the court to consider the movant's facts undisputed where the nonmoving party fails to object pursuant to Rule 56(c)").

for the East Region. (Johnson Aff. ¶¶ 2–3.) Aramark provides food service to WTRJ "pursuant to the parties' contract." (*Id.* ¶ 4.) In the contract, "WTRJ[ ] specifically sets forth the dietary rules and regulations to be followed by Aramark at [WTRJ] including but not limited to the caloric intake, menu, and special diets, such as for religious and medical needs." (*Id.* ¶ 5.)

Prior to entering into the contract, Aramark provided WTRJ with various menu options, including "whether to offer vegetarian, religious and/or medical diets; whether to offer hot meals, and, if yes, to what extent, what sources of protein to include with the meals; and, if meat is to be included on the menu, which meats will be provided." (*Id.* ¶ 6.) WTRJ, not Aramark, "specifically [chose] the menu options" to be provided to inmates. (*Id.* ¶ 7.) Moreover, WTRJ, not Aramark, "decides which inmates are to receive specific menu options, such as the standard, religious, vegetarian, or medical diets." (*Id.* ¶ 8.)

While Plaintiff was incarcerated there, WTRJ decided what meals Plaintiff would receive. (*Id.* ¶ 10.) WTRJ decided to place Plaintiff on a vegetarian diet. (*Id.*) "Neither Aramark nor Ken Peare had any authority or discretion to alter the Plaintiff's meal plan in any way." (*Id.*) The meals Plaintiff received "met the caloric and nutritional requirements for inmates and were adequate to maintain good health." (*Id.* ¶ 12.) Each day, Plaintiff "received meals that provided adequate levels of vitamin A, vitamin C, calcium, and iron, as well as approximately 2900 calories and 3300 mg of potassium." (*Id.*) "By comparison, the median intake of potassium by adults in the United States is approximately 2800 mg to 3300 mg." (*Id.* ¶ 13.)

## III. *Analysis*

### A. Plaintiff's RFRA Claim

 Plaintiff contends that Defendants violated his rights under the RFRA by withholding his Rastafarian diet. (Second Am. Compl. at 4.) However, the RFRA has been "invalidated as it applied to state officials." *Etterson v. Newcome*, No. 3:14CV650, 2015 WL 5818220, at *2 n. 3 (E.D.Va. Oct. 5, 2015) (citing *City of Boerne v. Flores*, 521 U.S. 507, 532–36, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)); *see also Carmichael v. Sebelius*, No. 3:13CV129, 2013 WL 5755618, at *5 (E.D.Va. Oct. 23, 2013) (noting that the RFRA only applies to federal defendants).

Here, Aramark is a private entity that has contracted with WTRJ to provide food service to WTRJ's inmates. (Johnson Aff. ¶ 4.) Aramark has employed Peare as a kitchen supervisor at WTRJ. (ECF No. 52 at 1.) WTRJ is "an authority organized [under state law] pursuant to Va.Code § 53.1–95." (ECF No. 27 at 1.) Thus, Defendants are not acting on behalf of a federal entity. Accordingly, the Court will **GRANT** Defendants' motion for summary judgment with respect to Plaintiff's RFRA claim.

### B. Plaintiff's First Amendment Claim

 Plaintiff also alleges that Defendants violated his First Amendment rights by denying him "religious vegan foods according to [his] Rastafarian religious rights." (Second Am. Compl. at 4.) According to Plaintiff, Defendants failed to provide him bananas, peanut butter and jelly, fruits, vegetables, and veggie burgers to accommodate his religious diet. (*Id.* at 6.)

 Under the Free Exercise Clause of the First Amendment, an inmate has a " 'clearly established right ... to a diet

consistent with his ... religious scruples.'" *Lovelace v. Lee,* 472 F.3d 174, 201 (4th Cir.2006) (quoting *Ford v. McGinnis,* 352 F.3d 582, 597 (2d Cir.2003)). As such, prison officials violate "this clearly established right if [they] intentionally and without sufficient justification den[y] an inmate his religiously mandated diet." *Id.* at 199. However, a policy that substantially burdens an inmate's ability to practice his religious beliefs withstands challenge as long as the policy is rationally related to a legitimate governmental interest. *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Turner v. Safley,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). A "substantial burden" is one that puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Employment Sec. Div.,* 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981).

. Nothing in the record before the Court, however, establishes that Defendants had any personal involvement in deciding which meals and what foods Plaintiff would receive. The evidence establishes that while Plaintiff was incarcerated, WTRJ "decided what meals the Plaintiff would receive. WTRJ[ ] placed the Plaintiff on a vegetarian diet. Neither Aramark nor Ken Peare had any authority or discretion to alter the Plaintiff's meal plan in any way." (Johnson Aff. ¶ 10.) Moreover, nothing in the record establishes that Defendants were even aware of Plaintiff's Rastafarian beliefs. Thus, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's First Amendment claim. *See Lovelace v. Bassett,* No. 7:07CV00506, 2009 WL 3157367, at *7 (W.D.Va. Sept. 29, 2009) (concluding that food service director was entitled to summary judgment on First Amendment claim because he "had no personal involvement in creating the two-meal Ramadan plan in effect in 2005 and had no authority to

change it"). Accordingly, Defendants' motion for summary judgment will be **GRANTED** as to Plaintiff's First Amendment claim.

### C. Plaintiff's Eighth Amendment Claim

■ Plaintiff next contends that Defendants violated his Eighth Amendment rights by failing to provide vegan foods as part of his diet while incarcerated at WTRJ. (Second Am. Compl. at 5.) Specifically, Plaintiff alleges that Defendants provided him cheese despite his assertions of being lactose intolerant, and that Defendants denied him bananas and other foods with potassium, causing his potassium levels to drop. (*Id.* at 6–7; *see also* ECF No. 48 at 5.)

■ To survive a motion for summary judgment on his Eighth Amendment claim, Plaintiff must demonstrate that Defendants acted with deliberate indifference to his serious medical needs. *See Brown v. Harris,* 240 F.3d 383, 388 (4th Cir.2001). A medical need is "serious" if it " 'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir.2008) (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir.1999)).

■ The subjective prong of a deliberate indifference claim requires Plaintiff to demonstrate that Defendants actually knew of and disregarded a substantial risk of harm to his person. *See Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed,* 195 F.3d 692, 695 (4th Cir.1999) (citing *Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir.1998) (citing *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm ... [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland,* 372 F.3d 294, 303 (4th Cir.2004) (quoting *Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir.1997)).

▪ "The Eighth Amendment requires that inmates be provided 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Berry v. Brady,* 192 F.3d 504, 507 (5th Cir.1999) (alteration in original) (some internal quotation marks omitted) (quoting *Green v. Ferrell,* 801 F.2d 765, 770 (5th Cir.1986)); *see also Wilson v. Johnson,* 385 Fed.Appx. 319, 320 (4th Cir.2010) (citing cases for proposition that Eighth Amendment requires nutritionally adequate food). Plaintiff fails to proffer evidence that he sustained any injury, much less a serious or significant physical or emotional injury, from the diet provided to him by Defendants. While incarcerated at WTRJ, Plaintiff "received meals that provided adequate levels of vitamin A, vitamin C, calcium, and iron, as well as approximately 2900 calories and 3300 mg of potassium." (Johnson Aff. ¶ 12.) These meals "met the caloric and nutritional requirements for inmates and were adequate to maintain good health." (*Id.*)

In his motion for summary judgment, Plaintiff claims that the denial of bananas and foods with potassium caused his potassium levels to "drop ... so low [that he] almost died." (ECF No. 48 at 5.) According to Plaintiff, he was admitted to the hospital on July 16, 2015, because he was experiencing breathing problems. (*Id.* at 3–4.) Plaintiff claims that hospital staff indicated that he had low levels of potassium. (*Id.* at 4.) Plaintiff also contends that he was forced to eat foods to which he was allergic, "which may have caused [his] hospital visit and stay." (*Id.* at 5.) In his opposition to Defendants' motion for summary judgment, Plaintiff contends: "It is evident to Daffy Duck that potassium plays a major role in people with high blood pressure, no one needs a medical degree to understand that. Deficiency of potassium can lead up to cardiac arrest in which Plaintiff has suffered." (ECF No. 57 at 2.) Other than his own unsupported allegations, however, Plaintiff has not provided admissible evidence to establish that he suffered adverse physical effects from the meals he received. *See Pearson v. Ramos,* 237 F.3d 881, 886 (7th Cir.2001) (holding that a prisoner "[w]holly lacking in medical knowledge" may not give expert medical testimony). Thus, Plaintiff has failed to establish the objective prong of his Eighth Amendment claim.

Plaintiff also fails to produce evidence that Defendants knew of and disregarded an excessive risk to Plaintiff's health. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. These Defendants (Aramark and Peare) did not "ha[ve] any authority or discretion

to alter the Plaintiff's meal plan in any way." (Johnson Aff. 110.) Clearly, Defendants are not entitled to substitute their judgment for that of the medical staff at WTRJ. Therefore, because Defendants were unable to alter Plaintiff's diet, Defendants could not have acted with deliberate indifference to Plaintiff's medical needs. *See Escalante v. Huffman*, No. 7:10CV00211, 2011 WL 3107751, at *12 (W.D.Va. July 26, 2011) (granting summary judgment to food services supervisor on plaintiff's Eighth Amendment claim because supervisor had no authority to change the plaintiff's medically-ordered diet), *Report and Recommendation adopted by* 2011 WL 3584992 (W.D.Va. Aug. 15, 2011). Accordingly, Defendants' motion for summary judgment will be **GRANTED** as to Plaintiffs Eighth Amendment claim.

### D. Plaintiff's Failure to Train Claim

█ Finally, Plaintiff alleges that Aramark's failure to train its staff led to the violation of his rights under the First Amendment. (Second Am. Compl. at 5.)

█ As this Court has noted:

To impose liability on a supervisor for the failure to train subordinates, a plaintiff must plead and prove that: (1) the subordinates actually violated the plaintiffs constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights.

*Brown v. Mitchell*, 308 F.Supp.2d 682, 701 (E.D.Va.2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–92, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). "[T]he fact that more or better training could have been instituted is not enough by itself to establish a claim for deliberate indiffer-

ence." *Guerra v. Montgomery Cty., Md.*, 118 Fed.Appx. 673, 676 (4th Cir.2004). It is not enough "to prove that an injury . . . could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct [because] [s]uch a claim could be made about almost any encounter resulting in injury." *City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197.

To survive summary judgment as to the first element of his failure to train claim, Plaintiff must raise a triable issue of fact that Defendants' subordinates actually violated his rights. *See Young v. City of Mt. Rainer*, 238 F.3d 567, 579 (4th Cir.2001). However, as discussed *supra*, the Court has already found that Plaintiff's rights were not violated. From the record before it, the Court concludes that Plaintiff has failed to demonstrate that a specific training deficiency caused a deprivation of Plaintiff's constitutional rights. Accordingly, Defendants' motion for summary judgment will be **GRANTED** as to Plaintiff's failure to train claim.

### E. Plaintiff's Fourteenth Amendment Claim

█ In his Second Amended Complaint, Plaintiff also suggests that Defendants violated his Fourteenth Amendment right to equal protection by failing to provide him with his Rastafarian diet "as they would the Muslim an[d] Jewish religion[s]." (Second Am. Compl. at 5.) Defendants have not addressed Plaintiff's equal protection claim in their motion for summary judgment.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause . . . is essentially a direction that all persons sim-

ilarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). Our United States Court of Appeals has stated:

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

*Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir.2001). Here, however, Plaintiff simply has not stated any facts whatsoever to meet this standard and support his equal protection claim; therefore, Plaintiff's allegations against Defendants are insufficient to "raise the right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plaintiff's allegations against Defendants with respect to his equal protection claim merely amount to nothing more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Accordingly, Plaintiff's equal protection claim will be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1).

**6.** Under Rule 54, subsections (a) and (b), of the Federal Rules of Civil Procedure, the Court's Order granting summary judgment to Defendants Aramark and Peare and dismissing Plaintiff s equal protection claim will not be a final judgment for purposes of appeal until the Court has also resolved Plaintiff's

## IV. *Conclusion*

For the foregoing reasons, the motion for summary judgment filed by Defendants Aramark and Peare (ECF No. 51) is **GRANTED**. Plaintiff's motion for summary judgment (ECF No. 48) is **DENIED**. Plaintiff's equal protection claim against Defendants Aramark and Peare is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1).[6] The Clerk is **DIRECTED** to update the docket to reflect that Defendant "Mr. Keare's" proper name is Ken Peare.

The Clerk is **DIRECTED** to send a copy of this Order to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED**.

claims against the remaining Defendants, Butler and Graham. As a result, Plaintiff may not yet appeal the Court's Order granting summary judgment to Defendants Aramark and Peare and dismissing Plaintiff's equal protection claim.